**Gene SNELL (Plaintiff), Appellant,**

**v.**

**William OVERFELT and Railway Express Agency, Inc., a Corporation (Defendants), Respondents.**

No. 29769.

St. Louis Court of Appeals.

Missouri.

Dec. 3, 1957.

Roy Hamlin, White & Partee, Hannibal,
Myrl Sternke, Palmyra, for appellant.

Carstarphen & Harvey, Ely & Hibbard,
Hannibal, for respondents.

DEW, Special Commissioner.

The appellant brought this action to re-
cover damages for personal injuries which
he claimed to have sustained when he fell
into a grease pit in a filling station at Paris,
Missouri. On change of venue the case was
sent to Marion County. Appellant re-
covered a verdict for $6,000 against the
respondents. Upon the motions of both
respondents the trial court granted them a
new trial on one of the grounds assigned by
them, to-wit: prejudicial closing argument
of the appellant's counsel. The appellant
has appealed from the order of the court
granting a new trial.

The petition, in substance, pleaded owner-
ship, management and control of the filling
station on the part of the respondent Over-
felt, his capacity as agent for respondent
American Express Agency, Inc., the gener-
ally unclean and unsafe conditions of the
premises before and at the time of appel-
lant's fall; the use of the station by the
appellant at the invitation of the respond-
ents for delivery of cans of cream to re-
spondent American Express Agency; and
the manner in which appellant, as such in-
vitee, slipped and fell into the unguarded
grease pit in the station as he was removing
his empty cans from where they had been
placed by respondents. The negligence
alleged was the failure of respondents to
keep the premises clean and safe for per-
sons doing business with them, and their
failure to guard or barricade the grease
pits for the protection of such persons, par-
ticularly the appellant.

The answers of the respondents denied
the charges of negligence, denied the re-
lationship of principal and agent between
them and pleaded contributory negligence.

Among the circumstances pertinent to
this appeal is the fact that at the trial there
appeared for one respondent, two members
of one law firm, for the other respondent
two members of another firm, and three
attorneys representing the appellant.

According to the evidence adduced by
the appellant he was at the time of his fall
engaged with his brother and their wives
in the operation of a dairy farm owned
by them, consisting of 740 acres, from
which they marketed the milk of 20 cows.
The filling station, located on a street in
Paris, Missouri, was owned by respondent
Overfelt. It faced east, and the portion
of the building south of the office was
walled off and used for the greasing and
servicing of automobiles. It contained a
basement or lower floor level reached by
stairs or steps. Two wooden platforms
were placed there, one under each of two
openings or pits in the ceiling above. The
platforms were of sufficient height and size
to permit men to stand on them and to work
on the under side of automobiles in greas-
ing or servicing jobs. The openings or pits
were each about 3½ feet wide and less
than an ordinary automobile in length. On
the main or street level floor there were
two entrance doors, one to each of these
grease pits. Around the two sides of each
pit were concrete tracks upon which to run
a car over the opening. A concrete stop
prevented the cars from proceeding too

far. On the street level and between the two pits a walkway or platform of smooth concrete, about four feet wide, extended to the rear or west end of the building. This walkway or platform was "greasy, slick and slimy."

The appellant's evidence further tended to prove that before and at the time in question, the respondents had an operating agreement or arrangement between themselves under which the respondent Overfelt received at his filling station shipments of merchandise for respondent American Express Agency, including appellant's shipments of cream. It was a custom of the respondents to place the appellant's empty cream cans at the rear of the pits and on the street level floor, back of an old oil reservoir stored there. On the day of his fall, at about 11:00 o'clock A.M., appellant entered the door to the north grease pit and walked to the rear or west end on the walkway between the pits, and as he was in the act of lifting or pulling two of his empty cream cans from their places, as described, and starting to turn toward the front of the station, he slipped and fell into the north grease pit. He testified that he did not stumble over any article on the walkway, but after getting out of the pit he noticed a spot of grease on the walkway. He fell to the wooden platform below, landing on his head and right shoulder, and sustained the serious injuries and damages of which he complains. Appellant called the attendant in charge, who helped him out of the pit and directed him to a doctor, who took him to a hospital at Moberly.

Appellant had sustained a lineal fracture of a bone of the right shoulder, a numbness of his right arm, other injuries claimed to be permanent, and other damages. After staying at the hospital about two weeks, appellant wore a shoulder cast for about thirty days. Because of his injuries, he and his brother sold their farm and bought a farm implement business. He can do work that does not require heavy lifting, but still suffers from some of his injuries.

The defense produced evidence to the effect that the appellant was thoroughly familiar with the place of the accident, having frequently obtained his empty cans from the same place; that when he approached there on the day he fell, he could and did see everything that was to be seen on the walkway, and that it was at the time clean and safe for use; that the appellant carelessly lifted out the two cans while turning around, and negligently fell into the north grease pit. For the purposes of this appeal, further detail of the evidence is unnecessary.

Following the verdict, both respondents filed motions for judgment in accordance with their motions therefor at the close of all the evidence, and their alternative motions for a new trial on several grounds, including, as stated, prejudicial closing argument of appellant's counsel, on which point alone the court granted respondents a new trial.

The charge in the motions pertaining to the prejudicial argument was, in substance, that the court failed to restrain, and by its ruling encouraged appellant's counsel in his closing argument, in commenting on matters not in evidence, and the use of immaterial and prejudicial matter, consisting of repeated characterization of appellant as "a human being," this "country boy," a "farmer" and contrasting him with respondent American Express Agency, which he called "a big Railway Express Company, a corporation in the State of Delaware"; referring to counsel for respondents as the "largest array of lawyers ever gathered in Marion County"; referring to the conduct of respondents' witness as "inhuman"; and otherwise appealing to the jury to decide the case on extraneous, immaterial and prejudicial grounds.

Appellant's counsel, in his closing argument, first complained to the jury of delay on respondents' part in taking appellant's deposition, which had been used without objection in the case; the failure of

the respondent Overfelt "to show up" for his deposition (over the objection of respondents); appellant's long wait in the office of respondents' physician to be examined at respondents' request (not borne out by the evidence); described the appellant as a "country boy," who had served in the United States army, was running a dairy farm with his brother, milking cows and delivering cream. Counsel said that he was glad that a Marion County jury would try the case of a Monroe County "country boy." Referring to respondents' counsel, he said: "Who do they represent? I am representing a human being, that country boy there. They represent this big railway express company, a corporation, with headquarters in the State of Delaware," At this point the following occurred:

"Mr. Ely (respondents' counsel) We object to that as improper argument, and call for a reprimand.

The Court: Overruled. The Court will allow the attorneys wide latitude.

Mr. Hamlin: (continuing) In other words, gentlemen, what I am trying to tell you is this: I am representing a human being, a country boy off of a farm over here in Monroe County; that boy sitting there, yet this Railway Express Company, these two distinguished lawyers sitting here, not wanting to pay this boy anything, this country boy and farmer."

Counsel, continuing his closing argument, referred to the attendant at the station, who also did some janitor work for a local bank, and had been a deputy sheriff, as a "scrubber" and as an "ex-policeman," and criticized him for denying the extent to which he assisted appellant after the fall, calling it inhuman to have refused such assistance, saying that people who would refuse the same are "not fit to be believed." Counsel said that: "My client, a country boy, the milking farmer," had a skinned place on his head and a shoulder bandaged so he could not use his arm. Reviewing appellant's injuries, counsel said: "That is what this lawsuit is about, and why would these fine gentlemen all come in here in such an array, both for the Railway Express Company and the other defendant, and say: 'No, don't pay him.' I wonder why the people back in that office in Maryland say that about a country boy of Monroe County." He said the respondent had more lawyers present than witnesses, trying to keep "this country boy" from recovering for his injuries; that he didn't understand the cause for all the lawyers for the "big Railway Corporation" and for the other defendant, nor "what is back of it that causes all this trafficking over here at this table."

At the close of the argument of the motions for new trial the Court remarked:

"This has been an interesting argument on both sides. The Court heard the evidence at the time of the trial and there can't be any question about what Mr. Hamlin said in his closing statement to the jury. Miss Scobee took that down, transcribed it and it is here today. The Court is entirely convinced that there are many statements in that closing argument that should not have been made. They are prejudicial. They are made for the purpose of creating an interest in plaintiff's client as to the injuries he received, the condition that he was in, many of which were proper, but the purpose of the speech, final talk to the jury, the last talk to the jury, was to create some feeling that would cause the jury to return a verdict for his client, and I am satisfied that the majority of the opinions, or the decisions of the appellate courts of Missouri, is to the effect that these various statements that Mr. Hamlin made were prejudicial, and that they were of such a type that they were bound to have some effect on the jury in an improper manner.

"The court is granting a new trial to the defendants under that ground for a new trial alone, not under any other one, and said motions are sustained."

■ This oral memorandum of record, supporting the Court's formal order entered, may be considered as explanatory of the order. Ponyard v. Drexel, Mo.App., 205 S.W.2d 267, 270. The order as entered of record by the Court was as follows:

"Now on this 15th day of December, 1956, comes the plaintiff by Roy Hamlin and White and Partee, his attorneys, and comes the Defendant, Overfelt, by Carstarphen and Harvey, his attorneys, and the Defendant, Railway Express Agency by Fuller, Ely and Hibbard, its attorneys, and the separate motions for new trial heretofore filed by the two Defendants herein are argued orally and submitted to the court, and the court being fully advised of and concerning the same doth sustain each of said motions, and it is accordingly by the Court ordered that a new trial be granted herein as to both Defendants and as to all of the issues in the case upon the grounds set out in the motions with reference to erroneous argument made by counsel for the Plaintiff, and that the verdict of the jury heretofore rendered is set aside."

■ It has been said that " 'Counsel have the right, in the interest of their clients, to argue to the jury, untrammeled by fear, unmolested by courts, and uninterrupted by opposing counsel, every fair inference deducible from the evidence that has been developed during the progress of the trial, for or against his client.' " Hancock v. Kansas City Terminal Ry. Co., 339 Mo. 1237, 100 S.W.2d 570, 582. It must, however, be borne in mind that a ruling of the trial court on the question of whether an argument to the jury is prej-udicial, is an exercise of judicial discretion of the trial judge, and the well established policy of appellate courts is not to disturb such ruling on appeal unless discretion has been abused or its reasonable limits have been exceeded.

It is said in Collins v. Cowger, Mo., 283 S.W.2d 554, 561: "The trial court, however, is allowed large discretion in permitting or restraining argument and as to the manner in which improper argument is to be restrained or its prejudicial effect purged or cleansed, and the appellate court will not interfere unless it clearly appears that the trial court has abused its discretion. Pritt v. Terminal R. Ass'n of St. Louis, Mo.Sup., 251 S.W.2d 622; Crews v. Kansas City Public Service Co., 341 Mo. 1090, 111 S.W.2d 54; Hancock v. Kansas City Terminal R. Co., 339 Mo. 1237, 100 S.W.2d 570; Id., 347 Mo. 166, 146 S.W.2d 627; Rouchene v. Gamble Const. Co., 338 Mo. 123, 89 S.W.2d 58; Kelso v. W. A. Ross Const. Co., 337 Mo. 202, 85 S.W.2d 527; Hancock v. Crouch, Mo.App., 267 S. W.2d 36. This is because a judge, present and presiding at a trial at the time an assertedly improper argument is made, is in a better position than we to gauge, in the circumstances surrounding a trial, the effect of counsel's remarks to a jury."

Other citations of authorities in Missouri for the general rule include Robbins v. Brown-Strauss Corp., 363 Mo. 1157, 257 S.W.2d 643, 648; Beer v. Martel, 332 Mo. 53, 55 S.W.2d 482; Jones v. Central States Oil Co., Mo.App., 170 S.W.2d 153; Bierman v. Langston, Mo., 304 S.W.2d 865, 867.

■ But the appellant contends here that the statements made in the argument and which are complained of by the motions for a new trial were facts based on evidence, were not prejudicial, and were made without objection. We are confronted with the explicit finding of the trial court that the argument *was* prejudicial in the respects specified, and with

the solemn order of the court granting a new trial on such ground alone. Of course, the mere truth of the statements complained of would not necessarily justify their improper use in the argument. Otherwise counsel might improperly resort to or unduly stress a party's racial, religious, political or occupational affiliation or connections. We are constrained to hold that in view of the nature of the remarks complained of, the superior opportunity of the trial court in the instant case to judge of their prejudicial effect, and the finding of the trial court that the same were prejudicial, and its order predicated thereon, there was no abuse of discretion in the granting of a new trial. 53 Am.Jur. p. 404, Section 501; 39 Am.Jur. p. 75, Section 58; 66 C.J.S. New Trial § 36, p. 127.

■ Appellant cites numerous cases wherein the failure or refusal of the court to order a new trial on the ground of alleged prejudicial argument was affirmed. The point in such cases is that the failure or refusal of the court to grant a new trial on a discretionary ground is, in effect, itself an exercise of judicial discretion, and under the established rule of appellate courts, as pointed out, will not be interfered with unless abused. Such authorities do not controvert those cases wherein the affirmative action of the court, likewise discretionary, granted a new trial on such ground instead of refusing to do so. Smith v. St. Louis Public Service Co., Mo., 277 S.W.2d 498, 502; Collins v. Cowger, supra.

But the appellant further contends that the respondents waived any right to complain of improper argument since they failed to make any objection to it. The record, as hereinbefore quoted, shows that the respondents, early in the argument, did object to the comments pertaining to the deposition and to the "wait" in the doctor's office, and to the references to the appellant as a "human being," a "country boy," and to the respondent American Express Company, as a "big Railway Express Com-

pany, a corporation, with headquarters in the State of Delaware." The court did not sustain any of these objections, and as to the last one mentioned, the court overruled it, saying that it was going to allow counsel "wide latitude." This apparently encouraged counsel for appellant who, thereupon, repeated the objectionable matter almost verbatim.

■ In the recent case of Chester v. Shockley, Mo., 304 S.W.2d 831, a police officer, who was not an eyewitness, was permitted to mark a photograph in evidence at a point where he said two automobiles collided, and to do so over objection. The objection was overruled and the testimony of the witness ensued at great length with no further objections made. The Supreme Court said, at page 835: "It is well settled that where a timely and sufficient objection has been squarely made, it is not necessary to follow up with repeated objections in order to preserve the point. Taylor v. Kansas City Southern Ry. Co., Mo.Sup., 293 S.W.2d 894; Wooten v. Friedberg, 355 Mo. 756, 198 S.W.2d 1. In the instant case the issue was explicitly presented to the trial court in the first instance, and, the objection being overruled, it was not necessary for plaintiff to thereafter repeat the objection each time defendant sought to elicit like testimony, in order to save the matter for our review." To the same effect see Kees v. Canada Dry Ginger Ale, Inc., 239 Mo.App. 1080, 199 S.W.2d 76. It is our opinion that in the case at bar the point of error was sufficiently preserved for review.

■ Appellant further asserts that notwithstanding the argument was improper (which is denied), the verdict was for the right party and should be affirmed. Under the conflicting evidence in this case, that all-inclusive conclusion that the verdict was for the right party would involve not only the credibility of the witnesses and the weight of the evidence, but the application

**722**

to the facts of the comprehensive rule of conditional duty on the part of the possessor of land toward a plaintiff visitor or invitee, as defined in Dixon v. General Grocery Co., Mo., 293 S.W.2d 415. It is apparent that this court could not and should not assume the prerogative in this case of determining whether, irrespective of errors, the verdict was for the right party. Furthermore, if the verdict for appellant was "induced" by immaterial and prejudicial closing argument of counsel, as the trial judge in the present case found, it cannot be accepted as "for the right party."

The respondents urge here that even if the trial court erred in granting a new trial on the ground assigned (which they deny) the motion should also have been sustained on other grounds assigned, such as, the giving of appellant's Instruction P–1. They brief at length their points of error in that instruction as contended in their motions for new trial, and argue that even though they did not appeal, they can on this appeal, pursue that ground of the motions as one upon which the court could and should have sustained their motions for a new trial. In other words, they assert that even if it can be said that the court granted them a new trial and assigned the wrong reason, the order, nevertheless, should stand if it should have been granted on any other ground assigned. However, since we have found that the court's order granting a new trial, as made, should not be disturbed, it will not be necessary to discuss errors, if any, in the instructions given.

The order of the court setting the verdict aside and granting a new trial in this cause should be affirmed. The Special Commissioner so recommends.

PER CURIAM.

The foregoing opinion of DEW, Special Commissioner, is adopted as the opinion of the court.

The order of the Circuit Court setting aside the verdict and granting a new trial is affirmed.

RUDDY, P. J., and MATTHES and ANDERSON, JJ., concur.