**In re the ESTATE OF Dorothy A.
ROMBERG, Incapacitated.**

**Jewel A. Reynolds, Appellant.**

No. 69765.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 25, 1997.

Before DOWD, P.J., and GARY M. GAERTNER and CRANE, JJ.

James B. Hayes, St. Louis, for appellant.

Lisa Mayer, Fenton, for Romberg.

Stuart Oelbaum, Christine A. Gilsinan, St. Louis, for respondent.

RHODES RUSSELL, Presiding Judge.

Jewel Reynolds ("Sister") appeals the denial of her application to be appointed guardian and conservator for her sister, Dorothy Romberg ("Dorothy"). The trial court found that Dorothy was incapacitated by reason of dementia and appointed the public administrator to be her guardian and conservator. We affirm the appointment of the public administrator as conservator, but reverse the appointment of the public administrator as guardian, and appoint Sister as guardian.

Dorothy is an eighty-eight year old woman who has never married and has no children. Her surviving family consists of Sister, an eighty year old California resident, who has applied for guardianship and conservatorship. Another sister resides in a nursing home in Florida and has two grown children, Bert Emerson ("Nephew") and Phyllis Johnson ("Niece"). Nephew lives in Florida, and Niece lives in Maine.

Dorothy moved from Hannibal to St. Louis later in her adult life and since 1995 has lived at Tower Grove Manor, an independent living retirement home. She has sufficient financial means to pay her own expenses. Her assets total approximately $416,000, which includes a trust fund and an insurance policy to provide for nursing home care.

Dorothy suffered a stroke in 1995. Since that time, she has become confused about managing her money, and, according to her family, cannot care for herself physically. Sister, who had been visiting with Dorothy at the time of her stroke, remained in Dorothy's home to care for her. In September 1995, Sister filed a Petition for Appointment as Guardian and Conservator. Dorothy was declared incapacitated by reason of dementia by the Circuit Court of the City of St. Louis. The finding of incapacitation is not disputed.

At the hearing, Sister, Nephew, and Dorothy testified. Dorothy stated that she had no objection to Sister or Nephew serving as her guardian and conservator, although Nephew made no application. Sister testified that Dorothy could no longer live at Tower Grove and would have to live in a nursing home. Dorothy needed personal assistance because of her recent stroke and Sister said she was willing and able to help.

Sister stated that, if appointed guardian and conservator, she planned to place Dorothy in a nursing home about two miles from her home in California. Dorothy testified that she would move to California, but that she would prefer to stay in Missouri because "it's been awfully nice to me." She also stated that she had friends here, but then had difficulty remembering any names or addresses.

Sister and Nephew both testified that the care of Dorothy had caused tension in the family. Nephew said that Sister had only

taken an interest in Dorothy in the past two years. Sister testified that, although she lived in California, she and Dorothy had remained in touch and, furthermore, she had been living with Dorothy and providing all her care since May 1995.

Dorothy's guardian ad litem recommended a neutral party be appointed guardian and conservator because of animosity among the family members. She also stated that Sister, although healthy and of sound mind, was nearly eighty years old, and possibly unable to handle an estate of this size, especially from such a distance. No evidence of Sister's inability to serve as guardian was presented. The guardian ad litem further stated that she had "no problem" with Sister being Dorothy's guardian.

The trial court denied Sister's application to be appointed guardian and conservator and appointed the public administrator of the City of St. Louis to serve in both positions. Sister appeals the court's appointment of the public administrator as the guardian and conservator.

Under our review, the judgment of the trial court must be affirmed unless there is no substantial evidence to support it, it is against the weight of evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). During oral argument on appeal, Sister's counsel stated that Sister's main concern was to be appointed guardian. It was conceded that there was substantial evidence to support appointing the public administrator as conservator.

The public administrator, with experience in serving as a conservator for many persons, would be able to more effectively manage Dorothy's assets. Further, the public administrator would be handling only a small portion of Dorothy's estate as the majority of her funds, approximately $366,000 of the total estate of $416,000, were held in a trust account in which she and Niece were co-trustees. According to the terms of the trust, Niece was now the sole trustee and is required to distribute the trust fund pursuant to the original terms of the trust. Sis-

ter's counsel indicated that Sister had no interest in managing any of Dorothy's money.

■ A non-relative may be appointed if the record discloses any reason that appointment would best serve the incapacitated's interest. *In re Estate of Wood*, 852 S.W.2d 867, 868 (Mo.App.1993). Whom to appoint lies within the sole discretion of the trial court. *Id.* In light of Sister's agreement and the substantial evidence in the record, we find no error and affirm the trial court's decision to appoint the public administrator as conservator.

In addressing Sister's points on appeal, we will discuss only her complaints in regards to the trial court's appointment of the public administrator instead of her as guardian as she is now in agreement with the decision that the public administrator serve as conservator.

■ In her first three points, Sister contends the trial court erred in applying § 475.050 RSMo 1994[1] which requires the preference of the appointment of a close relative unless there are findings of the relative's lack of suitability to serve, dissension within the family or objections from the family, infirmity of relative's ability due to her age, or any other reason whereby a stranger would best serve the interest of the incapacitated person.

Section 475.050.1 provides that, in appointing a guardian or conservator, the court shall consider four suitable categories of persons who appear willing to serve, including persons whom the incapacitated person has indicated would be acceptable. Subparagraph (3) lists one of the categories as "The spouse, parents, adult children, adult brothers and sisters and other close adult relatives of the incapacitated or disabled person ..."

■ Statutory and case law requires the preference for the appointment of relatives over strangers as guardians as there is a presumption that a relative is "likely to be more solicitous than a stranger" in providing care for the incapacitated. *In re Gollaher*, 724 S.W.2d 597, 601 (Mo.App.1986). This

1. Unless otherwise noted, all statutory references are to RSMo 1994.

preference, however, is not absolute. Several exceptions exist, including dissension in the family, adverse interest of the relative and the incapacitated person, or any other reason whereby a stranger would best serve the interest of the incapacitated person. *In re Estate of Wood,* 852 S.W.2d at 868. We find none of the exceptions exist here to prevent the appointment of Sister as guardian.

The public administrator's main argument is that § 475.050.1(1) requires the court to consider persons whom the incapacitated person has indicated would be acceptable. The public administrator contends that Dorothy's desire to remain in Missouri subordinates the preference of appointing a close relative as guardian. Dorothy, however, has been deemed incapacitated by reason of dementia as a result of her recent stroke. It is questionable whether she is capable of making a reasonable choice in light of her incapacity. Prior to her stroke and resulting disability, no family members ever recall hearing Dorothy state a preference as to whom she wished to care for her if the situation ever arose. While she expressed a desire to remain in Missouri, Dorothy also testified that she would be willing to live with Sister in California.

Sister testified that she was the most appropriate person to be appointed guardian because "I'm her sister. I care. And—I think that says it all. She's my sister." During the five months prior to the hearing, Sister lived with Dorothy at Tower Grove, providing all her care. However, because Tower Grove is an independent living center, Dorothy is unable to live there any longer and must be placed in a nursing home due to her disabilities after her stroke.

The public administrator further argues that Dorothy would be no better cared for in a nursing home in California than she would be in a nursing home in Missouri. We disagree. Sister resides in California, only two miles from the nursing home which has an opening for Dorothy. Sister's two adult children live nearby as well. Indeed, it seems that Dorothy would be better cared for in a California nursing home because she would be near three family members. In Missouri, where she has no relatives, Dorothy would be watched over by a stranger from the public administrator's office.

The appointment of Sister as guardian would result in numerous benefits that Sister could provide for Dorothy that the public administrator could not. Among those are love, concern, affection, and consanguinity, all of which are important. *In re of Gollaher,* 724 S.W.2d at 601. The public administrator serves as a guardian for many wards, while Sister would only be responsible for Dorothy. Dorothy's needs would not be treated as a business obligation, but as a personal family responsibility by Sister.

The public administrator points out that Sister is elderly and should not be depended upon to care for Dorothy. While it is true that Sister is eighty years old, she is in good health and of sound mind. Her age by itself does not make her unsuitable to serve as guardian. No evidence was presented indicating her inability to serve. The guardian ad litem expressed concern about Sister's age, but only where the conservatorship was concerned.

Lastly, public administrator cites dissension in the family as a reason to appoint someone other than Sister as guardian. While it appears the family has had what could be characterized as typical family differences over Dorothy's care, neither Nephew, Dorothy, nor the guardian ad litem stated any objections to Sister serving as guardian. Nephew expressed concern that Sister had shown more concern for Dorothy in the past two years than before, but he could not substantiate that claim, nor could he explain why that would make Sister a poor guardian.

Under the facts and circumstances, we find it would be in Dorothy's best interest to have Sister serve as her guardian. We reverse the trial court's decision appointing the public administrator as guardian and appoint Sister as guardian of the person.

Sister's final point is that the court erred in appointing the public administrator as guardian in that § 473.743(3) and (9) prohibit the public administrator from serving when there are other competent persons to act as

guardian. This point is moot in light of our determination that Sister should be appointed as guardian for Dorothy instead of the public administrator.

Reversed in part and affirmed in part.

SIMON and KAROHL, JJ, concur.