**In the Matter of Wanda L. BENSON,**

**Marilyn S. Schmidt, Appellant,**

v.

**Melissa A. Benson, Personal Representative of the Estate of Richard Benson, Respondent.**

No. 25209.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 21, 2004.

Lee E. Poppen, Lathrop & Gage, L.C., Springfield, for Appellant.

Douglas D. Lee and John E. Price, Carnahan, Evans, Cantwell & Brown, P.C., Springfield, for Respondent.

ROBERT S. BARNEY, Presiding Judge.

Appellant Marilyn S. Schmidt ("Appellant"), appeals from the judgment of the Probate Division of the Circuit Court of Christian County ("Probate Court"), which appointed the Public Administrator of Christian County ("Public Administrator") as guardian of Appellant's mother, Wanda L. Benson ("Wanda"), pursuant to section 475.079, after determining that Wanda was disabled and incapacitated.[1] *See* § 475.010(4), (9). She assigns no error to the Probate Court's appointment of the Public Administrator as the conservator of Wanda's estate.

In her sole point on appeal, more fully discussed below, Appellant maintains that the Probate Court abused its discretion by

---

**1.** We mean no disrespect by our use of first names in describing the ward and other pertinent individuals to the litigation. We do so for ease of reading and facilitating the understanding of the issues. Statutory references are to RSMo 2000, unless otherwise set out.

its appointment of the Public Administrator as guardian of Wanda. She argues the Probate Court ignored the statutory hierarchy set out in section 475.050.1(3), together with its preference for appointment of qualifying family members, such as herself, as guardian. She also asserts that the Probate Court did not in any way indicate that the "preference should be disregarded due to deficiencies on the part of Appellant."

The record reveals that Wanda was eighty-two years old at the time of the hearing in this matter and had been diagnosed as suffering from dementia. At the time of the hearing, Wanda had three living children: Appellant, who resided in Agoura Hills, California; Carol Tulleys, ("Carol"), from Prescott, Arizona; and Richard Benson, ("Richard"), who resided in Clever, Missouri. A fourth child, Jackie, passed away in 2000. Wanda had resided with Jackie for many years prior to his death.

On or about August 1, 2002, Wanda's son, Richard, with whom Wanda was living at the time, filed an application seeking to have a guardianship and conservatorship established for his mother. He sought the appointment of both offices. His sister, Appellant, then filed her application requesting she be named conservator and guardian for their mother, Wanda.

At the September 5, 2002, hearing, testimony was presented relating to Wanda's previous living arrangements, her tendency to move among the homes of her children when she became dissatisfied with them, her increasing inability to manage her finances, and her lack or inability to care for her personal hygiene.

The record shows that while Wanda had lived with both Carol and Richard on several previous occasions, she had never before resided with Appellant. Additionally, there was voluminous testimony from the siblings regarding their consistently, acrimonious relationships with one another and the strained associations they have maintained as a result of their mother Wanda's advancing age and her often inconsistent desires as to her residency and finances. Among the family problems elucidated at trial were recitations of long-term family disagreements; accusations and fears that one sibling or another would not allow access to Wanda were she to reside with one or the other; testimony regarding significant periods when the siblings had no contact with each other or their mother; allegations regarding undue influence over their mother's legal, medical, and financial affairs; and general concerns that their mother would not be adequately cared for by one or the other of the parties to this matter.

While there was much testimony centering around dissension between Appellant and her brother, Richard, there was also testimony relating to disagreements between Appellant and her sister, Carol, who technically is not a party to this action. The record shows that Carol had an estranged relationship with Appellant and expressed doubts about whether, in the event Appellant was appointed guardian, Appellant would permit visitation with her mother, Wanda. Also, testimony revealed that Carol was greatly concerned about Appellant's emotional ability to care for Wanda. Appellant admitted that she and Carol have communicated only once since 2000 and the time of the hearing, and then only about the pending litigation.

On the other hand, Appellant also accused Carol of attempting to thwart any communication between Appellant and Wanda.

Wanda's appointed guardian ad litem recommended that Wanda remain in Missouri. In its judgment, the Probate Court

determined that "Pat Wright, the duly elected Public Administrator of Christian County, Missouri, is a suitable and qualified person to serve as guardian of the person and conservator of the estate," and set out that, "[Wanda's] condition requires placement in the following type of living situation to be selected by [Wanda's] guardian: [son] Richard Benson ... 1582 Green Valley Road, Clever, Missouri 65631." This appeal followed.

 On Appellate review, we will not overturn the ruling of the Probate Court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously applies or declares the law. *Estate of Ewing v. Bryan,* 883 S.W.2d 545, 550 (Mo.App.1994); *see Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). On review of a court tried case, "due regard is given the opportunity of the trial court to judge the credibility of the witnesses." *Matter of Hancock,* 828 S.W.2d 707, 708 (Mo.App.1992). "Furthermore, 'we accept as true all evidence which is favorable to the prevailing party, including all inferences reasonably deducible therefrom, and we disregard any contradictory evidence.'" *Matter of Mitchell,* 914 S.W.2d 844, 847 (Mo.App.1996) (quoting *Matter of Walker,* 875 S.W.2d 147, 151 (Mo.App.1994)). This Court sets aside a judgment on the grounds that it is against the weight of the evidence only when we have a firm belief that the judgment is wrong. *Flathers v. Flathers,* 948 S.W.2d 463, 465 (Mo.App.1997).

Section 475.050, which governs the appointment of a guardian or conservator for a disabled or incapacitated person, states in pertinent part:

1. Before appointing any other eligible person as guardian of an incapacitated person, or conservator of a disabled person, the court shall consider the suitability of appointing any of the following persons who appear to be willing to serve:

(1) If the incapacitated or disabled person is, at the time of the hearing, able to make and communicate a reasonable choice, any eligible person nominated by the person;

(2) Any eligible person nominated in a durable power of attorney ...;

(3) The spouse, parents, adult children, adult brothers and sisters and other close adult relatives of the incapacitated or disabled person;

(4) Any other eligible person ... nominated in a duly probated will....

 The foregoing statutory preferences are not absolute and are subject to the sound discretion of the trial court. *In re Estate of Wood,* 852 S.W.2d 867, 868 (Mo.App.1993); *see Keyser v. Keyser,* 81 S.W.3d 164, 170 (Mo.App.2002).

 While section 475.050.1(3) creates a limited preference for the appointment of relatives as guardian and conservator of an incapacitated and disabled person, that subsection is subordinate to the preferences established in section 475.050.1(1) and (2). *Matter of Fulton,* 863 S.W.2d 931, 933 (Mo.App.1993). Furthermore, the preference for family members is not unquestionable, and exceptions do exist. "The rule is that relatives should be appointed over strangers as a guardian unless the record reveals evidence of dissension in the family, adverse interest of the relatives and the incompetent, the lack of business ability of the relative, or any other reason why the stranger would best serve the interests of the incompetent." *Id.* at 934; *Roots v. Reid,* 555 S.W.2d 54, 57 (Mo.App.1977); *see also In re Estate of Wood,* 852 S.W.2d at 868. The decision of

whom to appoint as conservator or guardian lies within the sound discretion of the trial court. *In re Estate of Wood,* 852 S.W.2d at 868.

■ In her point relied on, Appellant contends that under section 475.050.1(3), she should have been given preference for appointment because she is Wanda's daughter. Moreover, she asserts the trial court lacked any discernable reason for its deviation from the statutory presumption in favor of a family member.

■ While the Probate Court failed to recite its rationale for its holding in the judgment, and none of the parties appear to have requested specific findings of fact and conclusions of law, the Probate Court judge did give a fairly explanatory oral ruling.[2] In his oral pronouncement he specified that since Wanda had previously failed "to find happiness" in Arizona or Missouri, "the natural thing to do would be to try it in California" with Appellant, although there was no certainty she would be any happier there. In indicating his hesitation to appoint Appellant guardian, the Probate Court judge reasoned that it would "be sending [Wanda] to an environment that she hasn't been in yet. And given her past history of being places four weeks, or four months, she may not be happy there ... [a]nd frankly it may not work out there." He also related' that Wanda would be required to "start up a whole new life in an unfamiliar environment" and if she were unhappy there, the court would be faced with having to resolve the situation with both the guardian and the ward "2000 miles away." While Wanda's guardian ad litem revealed Wan-

da wanted to go to California, the Probate Court judge noted that she had never visited Appellant's home, and Appellant herself testified "she's not had a lot of contact [with her mother] for two years." The Probate Court judge acknowledged that the parties were "all intelligent, reasonable people, who have differences of opinion" regarding their mother's care, but "the differences between family members wind up putting stress on the ward" and "parents don't like their kids fighting among themselves." Subsequent to discussing the preference for the appointment of family members, the Probate Court judge appointed the Public Administrator in an effort "to start somewhere." He thereafter indicated that the goal was for Wanda to be "in the absolute least restrictive environment" and that he had "no problem" if she "want[ed] to go to California [if] it [could] be arranged." He advised that the current arrangement might:

> shed some light if we need to tweak on this and make a change at some point ... [b]ut I think for today, I–I'm just reluctant to send her out there with so many unknowns. And like I said, given her past history, she may not be happy two months after, or three months after she gets there. So I'm going to do this for today.

Missouri courts have consistently held that dissension among the ward's family members is contrary to the best interest of a ward and such disharmony is sufficient to warrant appointment of a public administrator as guardian and/or conservator in serving the best interest of the incapacitated person. *See Matter of Hancock,* 828

---

**2.** We typically disregard a trial court's oral statements made in ruling on an issue. *Jantz v. Brewer,* 30 S.W.3d 915, 919 (Mo.App.2000); *In re Estate of Oberman,* 281 S.W.2d 549, 553 (Mo.App.1955). However, while such statements are not part of the Probate Court's judgment in the instant matter, they may, nevertheless, be considered solely as an explanation of the judgment. *Jantz,* 30 S.W.3d at 919; *see Snell v. Overfelt,* 307 S.W.2d 716, 720 (Mo.App.1957).

S.W.2d at 709; *Estate of Korman,* 945 S.W.2d 10, 13 (Mo.App.1997); *Keyser,* 81 S.W.3d at 171.

■ Given the testimony regarding the extensive familial history of finger-pointing, mistrust, alienation, and manipulation, and that it likely was of a continuing and ongoing nature, we discern the Probate Court believed there was significant dissension among Wanda's children which was not in her best interest. The record reveals that the conflict in this family goes beyond the "typical family differences" as observed by the court in *In re Estate of Romberg,* 942 S.W.2d 417, 420 (Mo.App. 1997). Lastly, while Appellant additionally asserts that the trial court was required to make a finding that she was in some way deficient as a guardian before it eschewed the statutory hierarchy in favor of appointing a stranger, she, nevertheless, fails to cite pertinent case law expressly supporting this proposition. As already set out, the Probate Court is in the best position to judge the credibility of witnesses, *Matter of Hancock,* 828 S.W.2d at 708, and it may forego the family member preference if it feels the exceptions enumerated in *Keyser* exist. *Keyser,* 81 S.W.3d at 171. In our reading of section 475.010, et. seq., together with our review of the previously cited cases, we find no requirement that a family member seeking to be appointed as a guardian must be expressly found to be "deficient" in his or her ability to serve, as a prerequisite to a Probate Court being permitted to appoint a non-relative as guardian. Instead, case law typically provides that the "statutory preferences for guardian or conservator are not absolute and do not control where the record discloses dissension in the family, interests adverse to the protectee, or any other reason why a stranger would best serve the interest of the protectee." *Keyser,* 81 S.W.3d at 171; *see Matter of Hancock,* 828 S.W.2d at 709.

Given our standard of review, we cannot conclude under the circumstances set out in this case that the Probate Court abused its discretion in appointing the Public Administrator, rather than the Appellant, as guardian of Wanda. *Keyser,* 81 S.W.3d at 171–72. Point denied.

One last matter must be addressed. The record reveals that after this appeal was filed, Richard died on May 31, 2003, and "Suggestions of Death of Party" were filed on June 12, 2003. Respondent, Richard's estate—through its personal representative—was permitted, pursuant to Rule 52.13(a)(1), Missouri Court Rules (2002), to be substituted as a party to the action, and the matter was restored to the active docket of this Court. Appellant was also permitted to file an amended brief.

■ In her amended brief, Appellant additionally argues that in light of her brother's death, the trial court should be reversed due to a lack of "evidence to support the trial court's decision to disregard the statutory preference." She maintains that "[a]ny conflict between family members that may have existed has now been eliminated by the untimely death of Richard Benson." As explained below, Respondent counters that little has changed as a result of the death of Richard, and that this Court should not consider Richard's death in its substantive deliberation. Instead, Respondent maintains this Court should only view his demise as a procedural matter, related to the substitution of his estate as the proper Respondent herein. Quoting *McDonald v. Thompson,* 35 S.W.3d 906, 909 (Mo.App.2001), Respondent asserts "appellate review of a trial court's judgment is limited to evidence that was properly before the trial court;" accordingly, only the facts available on September 5, 2002, the date of the trial

court hearing, should be considered by this Court in its review.

While we agree with the general proposition that appellate "review of a trial court's judgment is limited to evidence which was properly before that court," *Estate of Russell,* 932 S.W.2d 822, 827 (Mo. App.1996), we are, nevertheless, mindful that in "a guardianship or conservatorship proceeding, the status of the parties is not the same as in an ordinary civil suit in which one party sues another and injustice is determined by its effect on the losing party...." *Matter of Crist,* 732 S.W.2d 587, 590 (Mo.App.1987). Here, of course, in addition to affecting the applicants who sought to be appointed guardian, the Probate Court's ruling invariably affects the ward. *See id.* The care and treatment of an incapacitated person is the subject of special legislative concern and treatment, as revealed by our review of section 475.010, et seq. In this appeal there is clear and satisfactory proof existing in the record from which this Court may properly exercise its obligation of appellate review without speculation as to the facts. *Baker v. Aetna Casualty & Surety Co.,* 193 S.W.2d 363, 366 (Mo.App.1946). The record clearly supports the proposition that little has changed as a result of the demise of Appellant's brother, Richard. As Respondent has pointed out, "contrary to Appellant's assertion, the dissention among Wanda's descendants most certainly was not eliminated with the death of Richard," particularly with regard to Appellant and Carol. Additionally, other factors supporting the Probate Court's determination have not been changed or altered as a result of Richard's death. As the record reveals, there yet remains an absence of close ties between Wanda and Appellant, and Wanda has exhibited a history of greater ties to Missouri than to California. Given these circumstances, we affirm the judgment of the Probate Court.

PREWITT, J. and GARRISON, J., concur.