**Kendell MISEMER, Appellant,**

v.

**DIRECTOR OF REVENUE,**
**Respondent.**

**No. WD 62351.**

Missouri Court of Appeals,
Western District.

May 25, 2004.

Kenneth C. Hensley, Raymore, MO, for appellant.

Victorine R. Mahon, Jefferson City, MO, for respondent.

Before EDWIN H. SMITH, P.J., HOLLIGER and LISA WHITE HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

Kendell Misemer appeals from a judgment denying reinstatement of his driving privileges following a suspension for driving while intoxicated. Misemer contends the trial court erred in determining that he failed to rebut the Director of Revenue's *prima facie* showing that he drove while intoxicated. Finding no error, we affirm the judgment.

### FACTUAL AND PROCEDURAL HISTORY

On June 15, 2001, Misemer was driving home after drinking three twenty-ounce cocktails at a lodge in Maryville. Around 1:00 a.m., State Highway Patrol Trooper Mike Quilty observed Misemer's vehicle crossing the center line on U.S. Highway 136 and pulled him over. During the traffic stop, the Trooper detected a strong odor of alcohol and noticed Misemer's eyes were bloodshot. Misemer failed two field sobriety tests. He was arrested for driving while intoxicated and taken to the Sheriff's Department at the Nodaway County Jail.

At the jail, Misemer responded no when questioned by Trooper Quilty as to whether he was ill or had taken any medications. Misemer consented to a breathalyzer test, which the Trooper administered at 1:27 a.m. Misemer's blood alcohol concentration (BAC) was reported at .115%.

The Director of Revenue subsequently suspended Misemer's driving privileges, pursuant to Section 302.505,[1] for driving with a BAC of .10% or more. Misemer petitioned for a trial *de novo*, where he argued the BAC results were contaminat-

---

1. All statutory citations are to the Revised Statutes of Missouri 2000, unless otherwise indicated.

ed and unreliable because he had two Rolaids tablets in his mouth at the time Trooper Quilty administered the breathalyzer test. The trial court rejected this defense, finding that Misemer gave the Trooper false information regarding the medication in his mouth and thereby waived any chance to complain about his BAC test results. The court sustained the license suspension based on a preponderance of evidence that Misemer was driving while his BAC was .10% or more.

Misemer filed a motion to vacate judgment, arguing the Director's evidence of intoxication was rebutted by a showing that Trooper Quilty failed to comply with the required fifteen-minute observation period prior to administering the breathalyzer test. The court again ruled Misemer waived any objection to the BAC test results by responding falsely to the Trooper's questions. The court found:

> ... Petitioner Kendell Misemer misled the arresting officer by denying that he was taking medication while having tucked between his chin and his gum a Rolaid antacid product, which was being taken because of a queasy stomach. The Petitioner failed to disclose this information to the officer who subsequently performed the breath test. The Petitioner then comes to this Court and complains that the results of the test were unreliable because of the presence of the Rolaid.

> The Petitioner can not have it both ways. If he wishes to complain about the presence of the Rolaid and the impact it would have on the breath reading, he has an obligation to be forthcoming with the officer by providing accurate information during the officer's inquiry.

The trial court denied the motion to vacate judgment, thereby affirming the license suspension.

## POINT ON APPEAL

In his sole point on appeal, Misemer argues the trial court erred in sustaining the license suspension in light of his evidence rebutting the Director's *prima facie* case. Misemer contends his rebuttal evidence demonstrated Trooper Quilty failed to comply with 19 CSR 25–30.060, which requires an officer to observe an arrestee for fifteen minutes before administering the breathalyzer test. This regulatory requirement helps to insure the arrestee's mouth is free of foreign substances that could contaminate the test results. See *Carr v. Dir. of Revenue*, 95 S.W.3d 121, 126 (Mo.App. W.D.2002). Misemer asserts he refuted the BAC test results of .115%, because the rebuttal evidence established that Trooper Quilty failed to observe the Rolaids tablets in his mouth during the fifteen minutes before the test was administered.

## STANDARD OF REVIEW

We must affirm the trial court's judgment unless it is unsupported by the evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Verdoorn v. Dir. of Revenue*, 119 S.W.3d 543, 545 (Mo. banc 2003). We review the evidence in the light most favorable to the judgment, giving deference to the trial court's factual determinations. *Hawk v. Dir. of Revenue*, 943 S.W.2d 18, 20 (Mo.App. S.D.1997).

## ANALYSIS

At a trial *de novo* conducted pursuant to Section 302.505.1, the trial court must determine whether a license suspension is supported by evidence that: (1) the driver was arrested upon probable cause for violating an alcohol-related offense; and (2) the driver's BAC exceeded the legal limit. *Verdoorn*, 119 S.W.3d at 545.

The Director of Revenue has the burden of proof to establish the suspension grounds by a preponderance of the evidence. *Id.* If the Director presents evidence of probable cause and the driver's BAC of .10% or greater, a presumption is established that the driver was intoxicated. *Id.* The driver is then entitled to rebut the Director's *prima facie* case with evidence that raises a genuine issue of fact regarding the validity of the BAC test results. *Id.* at 546. Weighing the evidence, the trial court must ultimately determine whether the Director met the statutory burden of proving by a preponderance of evidence that the driver drove while legally intoxicated. *Id.* at 545.

There is no dispute in this case that the Director presented a *prima facie* case. Misemer contends he rebutted the Director's presumption of intoxication by showing that Trooper Quilty failed to observe him for fifteen minutes prior to administering the BAC test, a violation of the procedure set forth in 19 CSR 25–30.060. He suggests that if he had been properly observed, Trooper Quilty would not have proceeded with the test until at least fifteen minutes after dissipation of the Rolaids tablets. Misemer presented expert testimony that the Rolaids can function as a sink to hold and bind alcohol and, when crushed in the mouth, can release enough alcohol to falsely elevate a BAC test result.[2]

▮ Based on this evidence, Misemer argued his breath sample was contaminated by the presence of Rolaids in his mouth. He further argued the contamination arose at least partially as a result of the Trooper's failure to observe whether he had anything in his mouth. The trial court considered and rejected this rebuttal defense, finding that Misemer intentionally withheld information regarding the medication in his mouth and, thereby, waived his right to challenge the validity of the BAC test results on grounds of contamination or related procedural defects in the observation period.

On appeal, Misemer does not directly address the court's waiver determination but simply argues that Trooper Quilty did not follow the minimum standards to which the police must adhere when submitting an individual to a breathalyzer test. We agree with the trial court's conclusion that Misemer waived the contamination-related defenses by refusing to truthfully answer the Trooper's questions. But even if these defenses had not been waived, the evidence in the record was sufficient to prove that Trooper Quilty complied with the minimum observation requirements of 19 CSR 25–30.060.

Trooper Quilty testified that he first made contact with Misemer around 1:00 a.m. on June 15, 2001, after pulling him over on Highway 136. He conducted sobriety tests and then placed Misemer under arrest at 1:10 a.m. On direct examination, Trooper Quilty described the subsequent events leading up to the breathalyzer test, as follows:

Q. What happened after you placed him under arrest?

A. I placed him in the front seat of my patrol car. Seat belted him in. I read him his Miranda rights. I transported him to the Nodaway County Sheriff's Department.

**2.** The deposition testimony of the physician expert, Dr. Allen Parmet, is not included in the record on appeal. However, the respondent's brief points out that Dr. Parmet was unable to testify as to how much Misemer's BAC may have been elevated as a result of the Rolaids tablets in his mouth.

Q. From the time you came in contact with him until you put him in handcuffs did you have him under observation?

A. Yes, I did.

Q. Did he smoke?

A. No, he did not.

Q. Did he drink?

A. No, he did not.

Q. Did he vomit?

A. No.

Q. Did he place anything in his mouth?

A. No.

Q. Where did you handcuff him?

A. I'm assuming you mean behind his back?

Q. Behind his back or in front?

A. Behind his back.

. . .

Q. Did you do a search of his person?

A. Yes.

Q. Did you find any Rolaids on his person?

A. Not that I recall, no.

. . .

Q. From the time you got back in the patrol car and the time you gave him the breath test did you have him under observation?

A. Yes.

Q. Did he smoke?

A. No.

Q. Did he drink?

A. No.

Q. Did he vomit?

A. No

Q. Did he take anything in his mouth?

A. No.

Q. Did you have him under observation that entire time from the time you got back into the patrol car and gave him the breath test?

A. Yes.

Q. Where did you take him?

A. To the Nodaway County Sheriff's Department here in Maryville, Missouri.

. . .

Q. And when you had an occasion to question Mr. Misemer that night, did you ask him if he had any physical defects?

A. Yes, I did.

Q. And what was his response?

A. No, he did not.

Q. Did you ask him if he was ill?

A. Yes, I did.

Q. What was his response?

A. No.

. . .

Q. Did you ask him, Are you taking tranquilizers, pills, or medicine of any kind?

A. Yes, I did.

Q. What was his response?

A. No.

Q. Did you ask him, have you had any injections or any other drugs recently, what for?

A. Yes, I did.

Q. And what was his response?

A. No.

. . .

Q. At any time when you were speaking to him that night did he mention anything about ingesting Rolaids?

A. No, he did not.

Q. And did you find Rolaids on him?

A. Not that I recall, no.

Q. And do you see anything mentioned about Rolaids on the booking sheet property inventory?

A. No, I did not.

. . .

Q. And did he agree to take the breath test?

A. Yes, he did.

Q. What time did he agree to take the breath test?

A. 1:27 a.m.

. . .

Q. And during that time for at least 15 minutes prior to the test you had Mr. Misemer under observation?

A. Yes, I did.

Q. Did he smoke during that time?

A. No, he did not.

Q. Did he take anything into his mouth during that time?

A. No, he did not.

Q. Did he vomit during that time?

A. No, he did not.

. . .

Q. And what time did you get a result for Mr. Misemer?

A. At 1:32 a.m.

Q. And what result did you get?

A. .115 percent.

The Director's evidence clearly established Trooper Quilty's compliance with 19 CSR 25–30.060 by observing Misemer for at least fifteen minutes before he administered the breathalyzer test. Misemer failed to rebut this evidence merely by testifying that he had Rolaids in his mouth when he gave the breath sample. Particularly given his own misconduct in concealing information about the Rolaids, Misemer's testimony does not create a genuine issue of fact as to whether the Trooper followed proper procedures to avoid contamination of the sample and invalidation of the test results. In fact, portions of Misemer's testimony actually support the Trooper's recollection that nothing occurred during the fifteen-minute observation period to indicate the test should not proceed. Misemer testified:

Q. During the 15 minutes immediately prior to the breath test did you put anything in your mouth?

A. No.

. . .

Q. Did you take anything—did you take anything in your mouth at all?

A. No, I was handcuffed. From the time he handcuffed me I couldn't take anything.

Q. From the time you were handcuffed until you were given the breath test you didn't take anything in your mouth?

A. I was handcuffed all the time—

We find no error in the trial court's determination that Misemer failed to rebut the Director's evidence that he drove while intoxicated. Misemer waived any defenses regarding contamination of the BAC test results and, in any event, did not produce evidence to refute the Trooper's compliance with the observation requirements of 19 CSR 25–30.060. Point denied.

The trial court's judgment is affirmed.

All concur.