Steven D. GHOLSON, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

No. WD 64901.

Missouri Court of Appeals,
Western District.

Jan. 16, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 27, 2007.

Cheryl Caponegro Nield, Jefferson City, for appellant.

Bart L. Wooldridge, Boonville, for respondent.

PAUL M. SPINDEN, Judge.

The Director of Revenue appeals the circuit court's judgment reinstating Steven D. Gholson's driving license. The director had revoked Gholson's driving license under authority granted her by Section 302.505, RSMo Supp.2005. The basis on which the circuit court overturned the director's revocation is the central issue in this case. In an explanation of its judgment during a post-judgment hearing, the circuit court made clear that it ruled against the director on the ground that Gholson rebutted the director's *prima facie* case. It concluded that the testing officer had not watched Gholson face-to-face during the entire, requisite 15–minute observation period before administering a breath test. We reverse the circuit court's judgment.

■ To establish a *prima facie* case, the director's burden was to establish by a preponderance of the evidence that the arresting officer had probable cause to arrest Gholson for driving while intoxicated and that Gholson's blood alcohol level exceeded the legal limit. Section 302.505.1. Because Gholson stipulated that he was arrested on probable cause, the director's burden was to establish only that Gholson's blood alcohol concentration was at least .08 percent by weight. She endeavored to meet this burden by presenting evidence of the results of a breathalyzer test.

■ For the results of a breathalyzer test to be admitted into evidence, "the director must establish the test was performed: (1) following the approved techniques and methods of the division of health, (2) by an operator holding a valid permit, (3) on equipment and devices approved by the division." *Coyle v. Director of Revenue*, 181 S.W.3d 62, 64 (Mo. banc 2005) (footnote omitted). When the director establishes these three factors, she has made a *prima facie* case for driving while intoxicated, and "the driver is entitled to present rebuttal evidence that raises a genuine issue of fact regarding the validity of the blood alcohol test results." *Id.* at 65.

Gholson attacked the validity of the breathalyzer test results by showing that a qualified individual did not watch him face-to-face for at least 15–minutes before the test as required by 19 CSR 25–30.060 and by testifying that he had placed chewing gum in his mouth during this time.[1] The evidence established that Trooper Brent Drummond arrested Gholson for driving while intoxicated and took him to the Cooper County jail for testing. At the jail, Drummond advised Gholson of the implied consent law and asked him to take a breath test. Gholson consented to take the test at 1:25 A.M., and Drummond administered the test 23 minutes later. The breathalyzer test indicated that Gholson's blood alcohol concentration was .101 percent. The parties dispute what happened during the 23 minutes between Gholson's consenting to the test and Drummond's administering the test.

Gholson testified that, between five and ten minutes before the test, he put a piece of gum in his mouth. Before the test, he said, he stood and asked Drummond for permission to use a restroom and announced that he had put gum in his mouth. According to Gholson, Drummond refused to allow him to use a restroom but did not

---

1. Pursuant to Regulation 19 CSR 25–30.060, a driver must be observed for 15 minutes before taking the test to ensure that no smoking, no vomiting, and no oral intake of any material occurred. *Coyle,* 181 S.W.3d at 65.

respond to his comments about gum. Brad Drew, a county detention employee sitting in the observation room with Gholson and Drummond, testified that he heard Gholson say that he had gum in his mouth but that he did not see Gholson put gum in his mouth.

Drummond testified that Gholson did not put anything in his mouth during the 23 minutes and that he did not hear Gholson say anything about gum. Drummond acknowledged that he was doing paperwork during the 23 minutes and did not watch Gholson continuously, face-to-face, during that time.

In overturning the director's revocation on the ground that Gholson rebutted the director's *prima facie* case, the circuit court stated in its judgment:

The Court, having considered the evidence adduced, finds the matter in favor of Petitioner Steven D. Gholson and against Respondent Missouri Department of Revenue, in that [Gholson] rebutted [the director's] prima facie case by showing that [Gholson] was not observed at all times during the 15–minute observation period prior to the administration of a Blood Alcohol Content Test and that [Gholson] had an opportunity to place chewing gum in his mouth during that period. The Court finds the provisions of Missouri Department of Health Regulation 19 CSR 25–30.060 were not strictly followed as required by *Carr v. Director of Revenue,* 95 S.W.3d 121 (Mo. App. W.D.2002).[2]

In response to the director's request that the circuit court clarify in its judgment whether or not it believed that Gholson had put gum in his mouth during the 23–minute observation period, the circuit court convened a hearing. During this hearing, the circuit court explained at length the basis for its judgment:

THE COURT: [T]here's no question that my ruling was based upon my interpretation of [*Carr v. Director of Revenue,* 95 S.W.3d 121 (Mo.App.2002)]. And here's the way I read the case[.] ... Well, first in the Carr case they talk about the rule that requires the observation for fifteen minutes. Then they go on and say ... in determining whether Mr. Carr rebutted the Director's prima facie case, the court was free to disregard this evidence and believe Mr. Carr's evidence on this issue. As such, the issue does not turn on credibility, but whether the evidence was such that the trial court could have reasonably inferred that Mr. Carr had in fact gone unobserved for the fifteen minutes preceding his test.

And then it goes on to say the Director disputed this by saying Mr. Carr offered no evidence that the butterscotch actually contaminated the test. But then the court says, to the extent that they hold that a finding by the trial court that the observation period were not followed is an insufficient basis by itself as a matter of law for the trial court to reinstate an individual's driver's license, we decline to follow the Eastern District[.]

And then they go on to say that the administrative burden on the State, to follow the observation period, is far less significant than the burden which would be on the defendant to prove ... that the failure to observe contaminated the test results.

[Y]es, my reading of Carr is that[,] although there was evidence that he placed something in his mouth, butterscotch or whatever, I don't read Carr as saying that we find in fact that he did

2. The emphasis was in the original.

put this in his mouth. I read Carr as saying, the fact that you have this fifteen-minute requirement and the court found that it was not followed was, in and of itself, enough to reinstate the petitioner's license. That's the way I read Carr, rightly or wrongly.

[DIRECTOR'S ATTORNEY]: Well, that's not an uncommon interpretation of Carr, which is one of the reasons why I'm fighting over this case further. Because I think we need some clarification on Carr from the—

THE COURT: Well, wouldn't it be better to put the case up to the Court of Appeals on that posture? If you're looking for some law to clarify what they mean, wouldn't it be better to leave it the way I've written it rather than to—I mean, you're basically saying, Judge, get on or off. Say that he either had the gum in his mouth or say he didn't. But if I leave it the way I am, isn't that testing what Carr really means? *Because ... that's clearly what I intend to hold, that my view of the evidence was ... that the observation period was not specifically complied with. And that alone, under my interpretation of Carr, is enough for the Petitioner to win.* In other words, that for the State to win they have to show they've complied with it.

That's ... the way I'm holding. Isn't it better, if you want some law on that, to bring it up on that basis?

[DIRECTOR'S ATTORNEY]: Well, my concern is that on appeal, and particularly since I didn't request findings of fact upfront—which in hindsight I probably should have—but on appeal the facts are generally deemed to be held in accordance with the result reached. And the Court of Appeals could readily say, well, the court could have found that he did in fact put gum in his mouth,

and so, ergo under Carr, Revenue loses, without getting in to interpret it any further.

I do want to point the Court's attention to one part of Carr.... But it's basically the last full paragraph of the decision, where they talk about, you know, we cannot—make no mistake, you know, we cannot say that the waiting period requirements were not in fact observed by the police, only the trial court can make that finding. But if as evident in our case such a finding is made, no further evidence need to be adduced in order to reinstate the driving privilege.

You know, I think they're saying, you know, there it's like, okay, the court's judgment was consistent with Mr. Carr having put the butterscotch in his mouth and smoked the cigarette in the holding cell within fifteen minutes of the test.

THE COURT: But they don't really say that, do they? They don't really say that we find that the trial court must—that the trial court in fact found that he did have it. I mean, aren't they saying that the court simply found that the fifteen-minute observation period wasn't strictly observed and that's enough?

. . . .

[The Director's] position, as I would understand it, is if [s]he takes this case up that the Court of Appeals is going to say, ["W]ell, that judge didn't say whether he thought the gum was in—didn't really make a finding whether he thought the gum was in the mouth or not. *He simply said that there was an opportunity for it to be there because the fifteen-minute period wasn't strictly observed.["]* And that's ... *my holding, and that's what I found.*

. . . .

... And ... that's the way I interpret the Carr case. I don't want to argue

with you, ... but I would think that that puts the issue more squarely to the appellate court, to say, ["W]ell, judge, it doesn't—you know, that's not enough. You must find in fact that some foreign substance was in the mouth, or you can't hold that way.["]

[DIRECTOR'S ATTORNEY]: And they may well rule that way. What I'm looking for here is if, you know, we have a more specific holding from the Court—like I said, if the Court actually believes he had the gum in his mouth, I've clearly got no case, I can save myself the time and trouble of the appeal. If ... the holding stands as it is, yeah, we would probably take that up and maybe we get some language ... clarifying Carr or distinguishing it, or whatever. I was hoping, you know, if the Court did a more specific ruling, that, ["O]kay, I don't necessarily believe he had the gum in his mouth, but I believe there wasn't a proper observation period—["]

THE COURT: *That's what I believe.* And maybe you're right. Maybe you're saying that my judgment simply didn't ... clearly set that forth. But that would be—

[DIRECTOR'S ATTORNEY]: Well, that's how I took the judgment.

THE COURT: Right.

[DIRECTOR'S ATTORNEY]: I could see where it could-you know, where on appeal it could be argued that that's ambiguous, and, like I said, otherwise the facts would be found in accordance with the result reached and—

THE COURT: I don't have a problem with clarifying that part of it, because that's ... my belief of the case based on Carr. My belief is that the fifteen-minute observation period was not strictly followed, and that under Carr that that's enough for the Petitioner to win.

Now, isn't that what you argued to me ... when we tried this case?

[GHOLSON'S ATTORNEY]: Basically, yeah.... I do want to add, though, that I followed Carr and I argued Carr because the court in Carr relied on evidence in the record, both for the petitioner and the respondent, that there was a material issue of genuine fact that the court could make reasonable inferences about the violation and the effect it had on the results of the test. And ... I side with the Court, in that I think it followed Carr as is, and I don't know that it needs more clarification.

THE COURT: Well, if it does, it's certainly in the record now.

[DIRECTOR'S ATTORNEY]: And that would probably be sufficient. That may provide enough guidance to the—

THE COURT: Well, I mean, I think it should be, because, I mean, I would think the Court of Appeals—you know, I think you have a valid point to make if you're saying, ["L]ook, judges out here are going—based on Carr[—]are going to hold against the Department of Revenue[;] they're not going to be held to the standard of did he actually put something in his mouth. They're going to say if the observation period itself is the threshold question, and if it was not strictly followed then we can't win[."] I]t seems to me like that would bring the issue squarely to the Court of Appeals that they would need to look at.

I mean, when I look at Carr, you know, they talk about, well, he had the opportunity to put some things in his mouth and, you know, maybe the inference is that the court is saying we believe the trial judge believed, in Carr, that he actually did do it. But I don't

see in Carr where they ever really got to saying that.[3]

Just as the circuit court believed that they would, these clarifying comments made clear that the circuit court did not believe that Gholson put gum in his mouth during the 23 minutes before the breath test. In its judgment, the circuit court found that Gholson rebutted the director's *prima facie* case by "showing that [Gholson] was not observed at all times during the 15–minute observation period prior to the administration of a Blood Alcohol Content Test and that [Gholson] had *an opportunity* to place chewing gum in his mouth during that period."[4]

The circuit court did not find that Gholson put chewing gum in his mouth during the 23 minutes. Indeed, it made clear that this was *not* its finding. When the director announced that she was hoping that the circuit court would make a specific ruling that "I don't necessarily believe he had the gum in his mouth, but I believe there wasn't a proper observation period," the circuit court responded, "That's what I believe." When Gholson asserted that he agreed with the circuit court that all that was required under *Carr* was a showing that the testing officer had not watched him face-to-face for at least 15 minutes, the circuit court responded that the basis for its ruling, after its additional comments at the hearing, were clearly in the record.

The circuit court tussled with the director over the need for clarifying the basis for its judgment because it correctly surmised that it had made the basis for its ruling quite clear. It had ruled for Gholson only because Drummond had not watched Gholson face-to-face for 15 minutes as the circuit court perceived our ruling in *Carr* to require. It did not find

that Gholson had placed gum in his mouth. It merely found that Gholson had an opportunity to put gum in his mouth.

◼ "[A] trial judge's oral comments, although not part of the court's judgment, may be considered as an explanation of the judgment[.]" *St. Pierre v. Director of Revenue*, 39 S.W.3d 576, 578–79 n. 5 (Mo. App.2001). *See also In the Estate of Rogers*, 125 S.W.3d 334, 341 (Mo.App.2004), and *In the Matter of Fulton*, 863 S.W.2d 931, 933 (Mo.App.1993).

◼ Although the parties did not request the *circuit court to make findings of fact or conclusions of law, we may consider the circuit court's explanations in determining what evidence the circuit court rejected. In the Interest of L.W.F.*, 818 S.W.2d 727, 733 (Mo.App.1991). Indeed, the Supreme Court has held that, "when no request is made of the court in a court-tried case to make specific findings of fact or conclusions of law and they are voluntarily given, such findings and conclusions do form a proper basis for assigning error and should be reviewed." *Graves v. Stewart*, 642 S.W.2d 649, 651 (Mo. banc 1982). *See also Sadler v. Favro*, 23 S.W.3d 253, 259 (Mo.App.2000), *abrogation on other grounds recognized by DeFreece v. DeFreece*, 69 S.W.3d 109 (Mo.App.2002), and *Herigon v. Herigon*, 121 S.W.3d 562 (Mo. App.2003).

The circuit court's explanation confirmed what is clear in the judgment itself: that the only basis for its judgment was that the officer did not comply with the 15–minute observation period. In making its ruling, the circuit court relied on *Carr v. Director of Revenue*, 95 S.W.3d at 121. From its reading of *Carr*, the circuit court believed that the officer did not properly carry out the 15–minute observation peri-

---

3. We added the emphasis.

4. We added the emphasis.

od because he did not look continuously at Gholson, leaving an opportunity for Gholson to place forbidden substances in his mouth. Although the *Carr* court found that the circuit court's finding that the 15–minute observation period was not followed is a sufficient basis, as a matter of law, for reinstatement of an individual's driving license, *id.* at 129, the Supreme Court rejected that view in *Coyle v. Director of Revenue*, 181 S.W.3d at 62.

In *Coyle*, the Supreme Court concluded that evidence that an officer did not observe an individual for the requisite 15–minute period "is not sufficient alone to rebut the director's *prima facie* case." *Id.* at 66. To rebut the director's *prima facie* case, the driver must "present evidence that he smoked, vomited or orally took other materials during that period or evidence that some other factor occurred with additional evidence showing that the factor affected the validity of the blood alcohol test results." *Id.*

█ Although Gholson presented evidence that he put gum in his mouth during the 15–minute observation period, the circuit court made abundantly clear that this was not the basis for its ruling. Instead, it based its ruling solely on the director's not establishing that the officer complied with the 15–minute observation period. That the officer did not observe Gholson for the requisite 15–minute period is not sufficient alone to rebut the director's *prima facie* case. Gholson, therefore, failed to rebut the director's *prima facie* case, and we, therefore, reverse the circuit court's judgment.

ROBERT G. ULRICH, Judge,
PATRICIA A. BRECKENRIDGE, Judge,
JAMES. M. SMART, Judge, RONALD R. HOLLIGER, Judge, and LISA WHITE HARDWICK, Judge, concur.

HAROLD L. LOWENSTEIN, Judge, dissents in separate opinion, in which VICTOR C. HOWARD, Chief Judge, JOSEPH M. ELLIS, Judge, EDWIN H. SMITH, Judge, and THOMAS H. NEWTON, Judge, concur.

HAROLD L. LOWENSTEIN, Judge, dissenting.

I respectfully dissent. The "explanations" uttered by a judge after rendering a judgment in a court tried case, where no findings or conclusions had been requested, should not be the foundation for now reversing and setting aside that judgment. Rule 73.01(c) provides that where no such timely request has been made (as in the case at bar), controverted fact issues (did Gholson put gum in his mouth within the observation period prior to the test) "shall be considered as having been found in accordance with the result reached." *See Misemer v. Dir. of Revenue*, 134 S.W.3d 761, 763 (Mo.App.2004). The post trial attempt to get the judge to make comments on the record that later would form the foundation for a reversal flies in the face of Rule 73.01.

The Director's sole point on this appeal is that Gholson failed to rebut the presumption of validity of the test result as established by her having made a *prima facie* case. No matter what the trial judge said after rendering judgment can detract from the fact that the result reached not only comported with the applicable common law at the time of the judgment and after trial motion, but with the later case of *Coyle v. Director of Revenue*, 181 S.W.3d 62 (Mo. banc 2005).

The controverted evidence in the case at bar consisted of Gholson's testimony that between five and ten minutes prior to the test he put gum in his mouth and told this to the trooper. A detention center employee testified he heard Gholson tell the trooper that Gholson was chewing gum.

The trooper denied that Gholson put gum in his mouth, nor did he hear Gholson make such a statement. It was uncontroverted that the trooper did not observe the subject for the requisite fifteen minutes prior to the administration of the test.

*Verdoorn v. Director of Revenue,* 119 S.W.3d 543 (Mo. banc 2003), was decided well before this case. The Court stated that there was no dispute that the Director had made a prima facie case. *Id.* 545. The driver had been arrested upon probable cause for having committed an alcohol-related offense and he had a blood alcohol level above the legal limit. § 302.505.1, RSMo 2000. In a trial *de novo,* under Section 302.535.1 this created a presumption the driver was intoxicated. *Verdoorn,* 119 S.W.3d at 545. Establishment of a prima facie case by the Director entitled the driver "to present rebuttal evidence that raises a genuine issue of fact regarding the validity of the blood alcohol test results." *Id.* 546. The Court continued saying "the driver's burden is one of production—not persuasion. The Director retains the burden of proof throughout the proceeding." *Id.* Verdoorn's only rebuttal evidence was the testimony of an expert that, based on Verdoorn's drinking pattern, he could have been intoxicated or he *"might not"* have reached the legal limit. *Id.* 547. "This inconclusive testimony was insufficient to rebut the presumption of intoxication established by the director's *prima facie* case."

No matter what the trial court said, Gholson's production of rebuttal evidence of chewing gum before the test was administered was sufficient to rebut the presumption of validity of the test result, and, under *Verdoorn,* the Director still bore the "burden of proof throughout the proceeding." 119 S.W.3d at 546. The trial court here was not bound to make findings of fact, and under Rule 73.01 the facts must

be read in light of the result. So, reviewed here on a question of law, under *Verdoorn,* the trial reached the correct result, even if for the incorrect reason.

This court in *Carr v. Director of Revenue,* 95 S.W.3d 121, 127–28 (Mo.App.2002), held there was evidence before the trial court which it could have concluded the driver ingested candy during the observation period in violation of 19 CSR 25–30.060 and such evidence would have been sufficient to rebut the prima facie case for suspension.

The later case of *Coyle v. Director of Revenue,* 181 S.W.3d 62 (Mo. banc 2005) (Coyle II), does not bolster the cause for a reversal. *Coyle* enunciated the proposition that non-observation for the fifteen minute period was not sufficient, alone, to rebut the director's case. *Id.* at 66. "Coyle was also required to present evidence that he smoked, vomited, or orally took other materials during that period...." *Id.* The court said that evidence of one of these factors, if believed by the court and under the state regulations, creates a presumption the test results may be invalid. Id. at 65. The defendant here presented such evidence. Consistent with the judgment for the driver, the evidence must be taken as believed; this court should affirm where the court reached the correct result, even if for a different reason. *Kubley v. Brooks,* 141 S.W.3d 21, 27 n. 5 (Mo. banc 2004).