**Nick R. HARVEY, Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

No. WD 72606.

Missouri Court of Appeals,
Western District.

May 9, 2012.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 26, 2012.

Application for Transfer
Denied Aug. 14, 2012.

Jonathan H. Hale, for Appellant.

Laurie Ward, for Respondent.

Before Court En Banc: LISA WHITE HARDWICK, Chief Judge, JAMES M. SMART, Judge, JOSEPH M. ELLIS, Judge, VICTOR C. HOWARD, Judge, THOMAS H. NEWTON, Judge, JAMES E. WELSH, Judge, ALOK AHUJA, Judge, MARK D. PFEIFFER, Judge, KAREN KING MITCHELL, Judge, CYNTHIA A. MARTIN, Judge and GARY D. WITT, Judge.

JOSEPH M. ELLIS, Judge.

The Director of Revenue ("Director") appeals from a judgment entered in the Circuit Court of Johnson County, Missouri reinstating the driving privileges of Nick R. Harvey. For the following reasons, the judgment is affirmed.

On August 16, 2009, at approximately 11:45 p.m., Harvey was stopped while driving an automobile in Johnson County, Missouri and, upon probable cause, was arrested for driving while intoxicated, § 577.010.[1] Harvey was taken to the police station, where he submitted to a breath test of his blood alcohol level at 1:03 a.m. Harvey had whiskey-soaked chewing tobacco in his mouth when he was arrested, where it remained while the test was performed.[2] The test indicated that Harvey had a blood alcohol concentration of .090 percent. Following the test, the arresting officer, Brian Daniel, seized Harvey's driver's license and informed him that his driving privileges would be suspended pursuant to § 302.505.

Harvey challenged the suspension of his driver's license, and the Director sustained the suspension following an administrative hearing. Harvey then requested *de novo*

---

1. All statutory references are to RSMo 2000 unless otherwise noted.

2. Harvey testified that he soaks his chewing tobacco in whiskey to keep it moist.

review of that decision by the circuit court. At trial, Harvey challenged the admission of the blood alcohol test results into evidence[3] and the validity of those test results in light of the fact that he had whiskey-soaked chewing tobacco in his mouth when the test was conducted. Following trial, the circuit court entered its judgment reinstating Harvey's driving privileges, stating, "The Court having heard the evidence and arguments of counsel, and being fully advised upon the law and facts, finds the issue(s) in favor of [Harvey] and against [the Director]." The Director appeals from that judgment.

As in any court-tried civil case, in a driver's license suspension case, this Court must affirm the trial court's judgment "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Zahner v. Director of Revenue*, 348 S.W.3d 97, 100 (Mo.App. W.D. 2011) (citing *White v. Director of Revenue*, 321 S.W.3d 298, 307 (Mo. banc 2010)). "We view the evidence in the light most favorable to the judgment and where the facts relevant to an issue are contested, deference is given to the circuit court's assessment of that evidence." *Bieker v. Director of Revenue*, 345 S.W.3d 254, 255 (Mo.App. S.D.2010).

In her sole point on appeal, the Director contends that the circuit court erred as a matter of law in following *Hurt v. Director of Revenue*, 291 S.W.3d 251 (Mo.App. S.D.2009), which the Director argues was improperly decided. The Director makes this claim based upon oral comments made by the circuit court following closing argument indicating that the circuit court thought *Hurt* to be controlling. However, the trial court made no reference to *Hurt* in its written judgment,

and our review is ordinarily limited to the written judgment and does not extend to oral comments made by the trial court, which are not part of the judgment. *Saunders v. Bowersox*, 179 S.W.3d 288, 294 (Mo.App. S.D.2005). While an appellate court may consider oral comments made by the trial court to aid in interpreting an ambiguous judgment, "[w]here the language of the judgment is plain and unambiguous, we do not look outside the four corners of the judgment for its interpretation." *Id.* (internal quotation omitted).

We recognize that in *Gholson v. Director of Revenue*, 215 S.W.3d 229, 234–35 (Mo.App. W.D.2007), in a 6–5 decision, this Court considered oral statements made by the trial court in assessing the reasoning for the trial court's judgment and declining to affirm on an alternative basis not referenced in the judgment, despite the fact that no findings of fact and conclusions of law had been requested by the parties. In so doing, *Gholson* relied on prior cases that had stated that "a trial judge's oral comments, although not part of the court's judgment, *may* be considered as an explanation of the judgment." *Id.* at 234 (emphasis added and internal quotation omitted).

In *Gholson*, the trial court court's written judgment offered a single, specific reason for its decision:

> The Court, having considered the evidence adduced, finds the matter in favor of Petitioner Steven D. Gholson and against Respondent Missouri Department of Revenue, in that Gholson rebutted the director's prima facie case by showing that Gholson was not observed at all times during the 15–minute observation period prior to the administration of a Blood Alcohol Content Test and that Gholson had an opportunity to place

3. The trial court took Harvey's objection under consideration but never ruled on it.

chewing gum in his mouth during that period. The Court finds the provisions of Missouri Department of Health Regulation 19 CSR 25.30.060 were not strictly followed as required by *Carr v. Director of Revenue*, 95 S.W.3d 121 (Mo.App. W.D.2002).

*Id.* at 231. Subsequent to the entry of judgment, the Director requested that the trial court amend its judgment and enter a specific finding related to whether it believed that Gholson had actually placed gum in his mouth during the observation period. *Id.* At the conclusion of the hearing on the Director's request, in the process of denying the request, the trial court stated that it had indeed based its judgment entirely on *Carr* and the officer's failure to observe the defendant for the entire observation period. *Id.* at 231–32. The trial court made clear that it had not made a factual finding that Gholson had placed gum in his mouth during the observation period. *Id.* Based upon the language of the judgment and the trial court's oral comments, this Court decided that it would not assume a finding on the part of the trial court that Gholson had placed gum in his mouth during the observation period. As a result, the majority reversed the trial court's judgment reinstating Gholson's license. *Id.* at 235. In so doing, the *Gholson* majority noted that the Missouri Supreme Court, in *Graves v. Stewart*, 642 S.W.2d 649, 651 (Mo. banc 1982), had held that gratuitous findings and conclusions contained in a written judgment form a proper basis for assigning error and should be reviewed.[4] *Id.* at 234.

In the case at bar, the trial court did not offer a specific reason or reasons for its decision in its written judgment, simply stating, "The Court having heard the evidence and arguments of counsel, and being fully advised upon the law and facts, finds the issue(s) in favor of [Harvey] and against [the Director]." Thus, unlike *Gholson*, nothing in the written judgment reflects a specific reason or reasons for ruling in Harvey's favor or could be read, expressly or by implication, to rule out any reason or reasons therefore. There is no ambiguity to be resolved from this simple, general judgment. The conditions that caused this Court to disregard the usual rule and to consider the trial court's oral statements in *Gholson* are simply not present in this case. In fact, *Matter of Fulton*, 863 S.W.2d 931, 933 (Mo.App. W.D.1993), relied upon by *Gholson* in justifying consideration of the trial court's oral comments, makes clear that oral comments should not be considered where findings of fact and conclusions of law have not been requested but are gratuitously provided by the trial court:

4. The Missouri Supreme Court took *Graves* on transfer after an opinion from the Southern District for the purpose of overruling *Prudential Property & Casualty Insurance Co. v. Cole*, 586 S.W.2d 433 (Mo.App. E.D.1979), on which the Southern District had relied in its opinion. 642 S.W.2d at 651. In *Cole*, subsequent to a bench trial where no request for findings of fact and conclusions of law had been made, the trial court nonetheless rendered extensive voluntary written findings and conclusions as part of its judgment. 586 S.W.2d at 435. On appeal from that judgment, the Appellant assigned error based on the trial court's voluntary findings of fact. *Id.*

The Eastern District rejected the claim, stating: "When, as here, no request is made of the court in a court tried case to make specific findings of fact or conclusions of law and they are voluntarily given, they are not the proper basis for assigning error and the general finding is the sole basis for review." *Id.* The Supreme Court rejected that holding and overruled *Cole*. *Graves*, 642 S.W.2d at 651. Interestingly, Judge Gunn authored *Cole* while he was a member of the Eastern District and later authored *Graves*, which overruled *Cole* when he was a judge of the Supreme Court.

We typically disregard a trial court's oral statements made in ruling on an issue. Such statements are not part of the trial court's order or judgment and may be considered only as an explanation of the order or judgment. However, if neither party requests that the court make specific findings of fact or conclusions of law, we must resolve all factual issues in accordance with the result reached and must affirm the judgment under any reasonable theory supported by the evidence.

(Citations omitted). Because no findings or conclusions had been requested and the trial court had merely entered general findings of incapacity and the suitability of the individual appointed to be the guardian and conservator, this Court in *Fulton* disregarded the trial court's oral statements and viewed the evidence in the light most favorable to the trial court's general findings and sought to affirm under any reasonable basis. *Id.* at 933–34.

While a handful of appellate cases have taken the liberty of reviewing gratuitous oral comments made by the trial court in limiting the bases upon which an unambiguous, general judgment in favor of a party could be affirmed, even those cases have stated their position in discretionary terms, allowing that an appellate court *may* consider the oral comments. *See Hudson v. Director of Revenue*, 216 S.W.3d 216, 225 (Mo.App. W.D.2007) ("oral comments *may* be considered"); *Estate of Rogers v. Battista*, 125 S.W.3d 334, 341 (Mo.App. E.D.2004) ("oral statements . . . *may* be considered"); *In re Benson*, 124 S.W.3d 79, 84 n. 2 (Mo.App. S.D.2004) ("[oral] statements . . . *may,* nevertheless be considered"); *Milligan v. Wilson*, 78 S.W.3d 215, 221 (Mo.App. W.D.2002) ("oral comments . . . *may* be considered"); *St. Pierre v. Director of Revenue*, 39 S.W.3d 576, 578–79 n. 5 (Mo.App. S.D.2001) ("oral comments . . . *may* be considered"). No

case has ever held, or remotely implied, that consideration of gratuitous oral comments made by the trial court is required. Moreover, the discretionary approach discussed above has not been endorsed by the Missouri Supreme Court, and its most recent pronouncement on the standard of review in court tried cases, *White v. Director of Revenue*, 321 S.W.3d 298 (Mo. banc 2010), discussed *infra*, by its language appears to reject such an approach.

■ In the case at bar, the circuit court did not make any specific written findings of fact or conclusions of law, and the record does not reflect that either the Director or Harvey requested any such findings or conclusions. Thus, as our Supreme Court recently reaffirmed, Rule 73.01(c) requires "that when there are no written findings, the evidence 'shall be considered as having been found in accordance with the result reached;' in other words, in the light most favorable to the judgment." *White*, 321 S.W.3d at 305. Accordingly, " 'all fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached,' " and "[w]e will affirm the trial court's judgment on any basis supported by the record." *Hirsch v. Ebinger*, 334 S.W.3d 695, 697 (Mo.App. E.D.2011) (internal quotation omitted); *see also White*, 321 S.W.3d at 305, 307 (reversing case law holding that Rule 73.01(c) did not apply in license revocation and suspension proceedings and noting "Rule 73.01(c) . . . provides that when there are no written findings, the evidence 'shall be considered as having been found in accordance with the result reached; in other words, in the light most favorable to the judgment.").

■ The Director argues that she presented a *prima facie* case and that Harvey bore the burden of rebutting her *prima facie* case with evidence calling into ques-

tion the validity of the blood alcohol test. She relies on *Coyle v. Director of Revenue*, 181 S.W.3d 62 (Mo. banc 2005), for this proposition. That aspect of *Coyle*, however, was reversed by the Missouri Supreme Court in *White v. Director of Revenue*, 321 S.W.3d 298, 306 (Mo. banc 2010). Under *White*, there is no presumption that the Director's evidence establishing a *prima facie* case is true, and there is no burden shifted to the driver to produce evidence to rebut such a presumption. *White*, 321 S.W.3d at 306. Both the burden of persuasion and the burden of production of evidence rest squarely on the Director and do not shift at any point. *Id.*

■ "When the facts relevant to an issue are contested, the reviewing court defers to the trial court's assessment of the evidence." *Id.* at 308. The "trial court is free to disbelieve any, all, or none of that evidence." *Id.* As noted in *White*:

> One way a party contests an issue is by contesting the evidence. To contest evidence, a party need not present contradictory or contrary evidence. While a party can contest evidence by putting forth evidence to the contrary, a party also can contest evidence by cross-examination or by pointing out internal inconsistencies in the evidence. For example, a legitimate factual dispute or credibility determination is presented by cross-examination of a witness for the Director which raises a legitimate credibility dilemma with respect to a material aspect of the Director's case. A party also may contest evidence by arguing to the trial court that the witness is not credible as apparent from the witness's demeanor or because of the witness's bias or the witness's incentive to lie.

*Id.* (internal quotations and citations omitted).

■ In the case at bar, Harvey presented evidence that he had placed chewing tobacco that had been soaking in bourbon in his mouth prior to being stopped by Officer Daniel and that the whiskey-soaked chewing tobacco was still in his mouth when the breathalyzer test was performed. Through cross-examination and argument, Harvey challenged the reliability and validity of the blood alcohol test results based upon the presence of the whiskey-soaked chewing tobacco in his mouth. In response, the State presented testimony from an expert who opined that the whiskey-soaked tobacco in Harvey's mouth would not have affected the accuracy of the breath test results. Harvey then sought to discredit that opinion through cross-examination.

Because the validity of the test results was contested, the trial court was free to assess the credibility and weight to be afforded to the evidence presented related to chewing tobacco and breath tests. *Id.* Since all fact issues upon which no specific written findings are made must be considered as having been found in accordance with the result reached, the trial court must be deemed to have found the test results to be unreliable in this particular instance and that the Director, therefore, failed to prove that element of her case. Under our standard of review, we must defer to that determination. *Id.* Since the judgment can be affirmed on that basis, we need not address whether the judgment could or should also be affirmed under the rationale expressed by the Southern District of this Court in *Hurt*. See *Gaydos v. Imhoff*, 245 S.W.3d 303, 306 (Mo.App. W.D.2008) ("We must affirm the trial court's judgment if it is sustainable for any reason supported by the record.").

The Dissent contends that, under *Coyle v. Director of Revenue*, 181 S.W.3d 62 (Mo. banc 2005), which had yet to be expressly reversed by *White* at the time the judgment in this case was entered, the trial

court could not have found that the breath test was unreliable because the Director's breath test evidence was presumed to be valid absent evidence from the driver proving to the contrary. The Dissent states that the trial court was bound to follow *Coyle* and that this Court cannot view its judgment as having done otherwise.

There are several problems with the Dissent's contention. First, while the Director does argue that *Coyle* was not reversed by *White*, an assertion we have already rejected, the Director does not raise the novel claim espoused by the Dissent. "It is not the function of an appellate court to search the record to identify possible errors and research any issues so revealed." *Huffman v. SBC Services, Inc.*, 136 S.W.3d 592, 593–94 (Mo.App. S.D. 2004). "Appellate courts should not become advocates for an appellant by speculating about facts and arguments that have not been made." *Chase v. Baumann Property Co.*, 169 S.W.3d 891, 893 (Mo. App. E.D.2005). For this reason alone, the Dissent's contention must be rejected. But there are substantive reasons as well.

In *White*, the Supreme Court overruled *Coyle* and cases of its ilk because they had failed to follow the legislative mandate of § 302.535.1, the rules of civil procedure, and the case law related to court-tried civil cases by creating a presumption of validity in the Director's evidence and placing a burden of production on the driver. *White*, 321 S.W.3d at 307. But long before *White* expressly overruled *Coyle*, our Supreme Court effectively did so in *York v. Director of Revenue*, 186 S.W.3d 267 (Mo. banc 2006) and *Guhr v. Director of Revenue*, 228 S.W.3d 581 (Mo. banc 2007). In *York*, the Court ruled that, although the evidence as to indicia of intoxication was uncontroverted, "the trial court, in its discretion, was free to draw the conclusion that there was no probable cause based

upon its assessment of th[e] evidence and the officer's own equivocation of the existence of probable cause." *York*, 186 S.W.3d at 272. As this Court later noted in *Furne v. Director of Revenue*, 238 S.W.3d 177, 180 (Mo.App. W.D.2007), "[t]hus, the [*York*] Court gave deference to .the trial court's judgment even though considering uncontroverted evidence."

*York* was followed fifteen months later by *Guhr*, where the Court reaffirmed that there was only one standard of review for all court-tried civil cases, no matter what the subject matter of the individual case might be. *Furne v. Director of Revenue*, 238 S.W.3d 177, 180 (Mo.App. W.D.2007). As noted by this Court in *Furne*, this clarification had been made in *Guhr* because of the various "appellate court decisions that had strayed from the *Murphy v. Carron*[ 536 S.W.2d 30 (Mo.1976) ] standard of review in alcohol related driver's license suspension and revocation cases" and "opted not to defer to the credibility determination and the weight given the evidence by the trial court where the driver did not present evidence contradicting that of the Director." *Furne*, 238 S.W.3d at 180. Thus, by holding that "the trier of fact has the right to disbelieve evidence, even when it is not contradicted," and that it is only when the facts are uncontested that no deference is owed to the trial court, *Guhr*, 228 S.W.3d at 585 n. 3, the Court in *Guhr* effectively overruled *Coyle*'s requirement that the driver must come forward with rebuttal evidence regarding the validity of the test results. In other words, the driver could contradict and contest the validity of the test through, for example, cross-examination, which the trial court was free to accept, and to which the appellate court would owe deference. Thus, contrary to the position taken by the Dissent, the trial court could well have reached the same conclusion by following

*York, Guhr, Furne,* and the appropriate existing statutes, rules, and other case law related to court-tried cases even before *White* expressly overruled *Coyle.*

The judgment is affirmed.

HOWARD, NEWTON, WELSH, PFEIFFER and WITT, JJ. concur.

AHUJA, J. dissents in separate opinion filed.

HARDWICK, C.J., SMART, MITCHELL, and MARTIN, JJ. concur in dissent.

ALOK AHUJA, Judge.

The majority affirms the judgment reinstating Harvey's driving privileges by presuming that the trial court "found the [breath] test results to be unreliable in this particular instance." Maj. Op. at 829. But we *know*—for two separate reasons—that the trial court made no such finding. I cannot join the majority in pretending that the trial court simply made a weight-of-the-evidence determination. I respectfully dissent.

### I.

The first reason we know that the trial court did not find the test results unpersuasive is because the trial court *said* why it was ruling as it did. At the conclusion of trial, the court gave a detailed on-the-record explanation of the basis for its ruling. The court's concluding remarks (which include factual findings) make clear that the court entered judgment for Harvey because that result was required by *Hurt v. Director of Revenue,* 291 S.W.3d 251 (Mo.App. S.D.2009)—*not* because the court made a factual finding concerning the reliability of the breath test results. The Court stated:

I did find Sergeant Daniel to be very honest and forthright with what he had to say under oath and what he did and didn't know regarding the issue of whether or not Petitioner had tobacco in his mouth. He testified that he didn't think Petitioner had it in his mouth, and I believed him, but he admits he never looked into Petitioner's mouth nor did he ask if he had anything in Petitioner's mouth.

I will also say that I find the Petitioner to be very credible. The Court, after hearing his testimony and observing the Petitioner, the Court believes that he did have tobacco in his mouth at the time that he took the test, and the Court will make that factual finding.

So I believe both witnesses. The officer didn't know, and this gentleman tells me he did, and I believe him.

Respondent's expert testified that he had seen no scientific study that dealt with whiskey/bourbon in tobacco, but he did make some very interesting comparisons with other similar studies, which the Court did find very interesting.

The Court did read several cases that . . . counsel pointed out were pertinent, and the case that does stand out in this case is the *Hurt* decision. The facts in *Hurt* were very similar to the instant case. *It appears the law in Missouri at this point is contained in the Hurt decision, and therefore, following the law in Hurt, judgment will be in favor of Petitioner.*

I would ask that you please get me a proposed judgment entry. . . .

I am the first to admit that I may be wrong on this, and if I am, you take me up and you show me. *I am just going on what the law*—but the law *states to me as of right now* that is what it is.

(Emphasis added.)

We may properly consider these comments in determining the basis of the trial

court's judgment. We faced a strikingly similar situation in another *en banc* decision less than five years ago: *Gholson v. Director of Revenue*, 215 S.W.3d 229 (Mo. App. W.D.2007) (en banc). *Gholson* was a driver's license revocation case much like this one. In *Gholson*, the parties disputed whether the trial court had ordered reinstatement of driving privileges *solely* because the arresting officer failed to maintain continuous face-to-face contact with the driver throughout the fifteen-minute observation period, or instead whether the judgment could be affirmed by presuming that the trial court had *also* found that the driver placed gum in his mouth during the observation period (as the driver had testified). This Court stated that "[t]he basis on which the circuit court overturned the director's revocation is the central issue in this case." *Id.* at 230.

In *Gholson*, the trial court's judgment stated only that the Director had failed to establish that police conducted a proper fifteen-minute observation. After judgment was entered, the Director filed a motion to clarify the judgment, to have the trial court decide whether or not the driver had, in fact, put gum in his mouth during the observation period, as the driver claimed. At a post-judgment hearing, the Director's counsel explained his reason for requesting clarification:

> [M]y concern is that on appeal, and particularly since I didn't request findings of fact upfront—which in hindsight I probably should have—but on appeal the facts are generally deemed to be held in accordance with the result reached. And the Court of Appeals could readily say, well, the court could have found that he did in fact put gum in his mouth, and so ... Revenue loses, without getting in to interpret it any further.

*Id.* at 232. The circuit court refused to make a specific finding concerning whether the driver had in fact put gum into his mouth during the observation period, explaining that the *sole* basis of its ruling was the failure to carefully monitor the driver for fifteen minutes:

> THE COURT: ... [W]hat I intend to hold [is] that my view of the evidence was ... that the observation period was not specifically complied with. And that alone, under my interpretation of *Carr* [*v. Director of Revenue*, 95 S.W.3d 121 (Mo.App. W.D.2002) ], is enough for the Petitioner to win. In other words, that for the State to win they have to show they've complied with it.

*Id.*

In these circumstances, the *Gholson* majority held that the driver could not argue for affirmance on the basis of a presumed factual finding that he had put gum into his mouth, even though the record would have supported such a finding:

> The circuit court tussled with the director over the need for clarifying the basis for its judgment because it correctly surmised that it had made the basis for its ruling quite clear. It had ruled for Gholson only because Drummond had not watched Gholson face-to-face for 15 minutes as the circuit court perceived our ruling in *Carr* to require. It did not find that Gholson had placed gum in his mouth. It merely found that Gholson had an opportunity to put gum in his mouth.
> *"[A] trial judge's oral comments, although not part of the court's judgment, may be considered as an explanation of the judgment[.]"*
> Although the parties did not request the circuit court to make findings of fact or conclusions of law, *we may consider the circuit court's explanations in determining what evidence the circuit*

*court rejected.* Indeed, the Supreme Court has held that, "when no request is made of the court in a court-tried case to make specific findings of fact or conclusions of law and they are voluntarily given, such findings and conclusions do form a proper basis for assigning error and should be reviewed." *Graves v. Stewart,* 642 S.W.2d 649, 651 (Mo. banc 1982).

*Id.* at 234 (emphasis added; other citations omitted).[1] *Gholson* is not alone in holding that a trial court's oral statements may be considered to explain the basis for its judgment. *See, e.g., Hudson v. Dir. of Revenue,* 216 S.W.3d 216, 225 (Mo.App. W.D. 2007); *Est. of Rogers v. Battista,* 125 S.W.3d 334, 341 (Mo.App. E.D.2004); *In re Benson,* 124 S.W.3d 79, 84 n. 2 (Mo.App. S.D.2004); *Milligan v. Wilson,* 78 S.W.3d 215, 221 (Mo.App. W.D.2002)[2]; *St. Pierre v. Dir. of Revenue,* 39 S.W.3d 576, 578 n. 5 (Mo.App. S.D.2001).[3] These courts obviously did not consider their approach to be inconsistent with Rule 73.01(c)'s directive that "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached."

*Saunders v. Bowersox,* 179 S.W.3d 288 (Mo.App. S.D.2005), cited by the majority, is not to the contrary. In *Saunders,* the trial court entered two separate judgments at different times, revoking a defendant's probation on two separate criminal convictions. *Id.* at 290. The first probation-revocation judgment explicitly referred to only one of the charges. The State nevertheless argued that the first judgment had in fact revoked probation on *both* convictions, based on oral comments by the trial court when the first judgment was entered. *Id.* at 293. The State thus sought to use oral statements *to significantly enlarge the relief afforded* in the first judgment. In those circumstances, the Southern District invoked the rule that "other parts of a record, such as oral statements by the trial judge, cannot be used to contradict an *unambiguous* judgment." *Id.* Here, however, the trial court's statements do not contradict, but simply explain, its judgment; the present situation is thus completely unlike *Saunders.* Moreover, consistent with *Gholson, Saunders* itself recognizes that " '[t]he court may consider such [oral] comments so long as they do not oppose, dispute, or impeach the judgment and are not used as a substitute for the judgment.' " *Id.* at 294 (citation omitted). *Matter of Fulton,* 863 S.W.2d 931 (Mo.App. W.D.1993), also cited by the majority, likewise recognizes that oral comments may be considered "as an explanation of the order or judgment." *Id.* at 933.

1. Much like the majority today, the dissent in Gholson argued that, despite the trial court's oral comments, this Court could affirm the reinstatement of Gholson's driving privileges on the basis of a presumed finding that he had, in fact, put gum in his mouth. According to the dissent, "[t]he 'explanations' uttered by a judge after rendering a judgment in a court tried case, where no findings or conclusions had been requested, should not be the foundation for now reversing and setting aside that judgment." *Id.* at 235 (Lowenstein, J., dissenting). That view was rejected by the majority opinion.

2. Overruled on other grounds, *Verdoorn v. Dir. of Revenue,* 119 S.W.3d 543, 546–47 (Mo. banc 2003).

3. I am confident that in countless other cases we have referred to comments from the bench to identify the rationale for a trial court's decision, without feeling the need to even justify the reference. To cite only one recent example, *see Estate of Nelson,* 363 S.W.3d 423 (Mo.App. W.D.2012) (relying on trial court's oral explanation to conclude that a judgment denied the State's Medicaid reimbursement claim on legal grounds, not due to disbelief of the State's evidence).

Although the majority recognizes that a number of prior cases have held that a trial court's oral explanation of a ruling *may* be considered on appeal, it points out that "[n]o case has ever held, or remotely implied, that consideration of gratuitous oral comments made by the trial court is required." Maj. Op. at 828. I accept that this is a matter of the appellate court's discretion, not a mandate. But there are persuasive reasons to exercise our discretion to consider the trial court's explanatory oral remarks in this case. The court's comments are unequivocal and unambiguous, and reliance on those remarks would not modify the relief awarded by the judgment. The court's oral explanation is not tentative or preliminary, but was made by the court at the conclusion of trial, after considering counsel's closing arguments, and shortly before execution of the written judgment later the same day. The trial court clearly expected that its oral statements would form the basis for appellate review: it stated that it was "mak[ing] . . . factual finding[s]," and understood that its legal determination (*i.e.,* that *Hurt* was binding upon it) would be reviewed by this Court.

Indeed, the record here is so clear that *Harvey's counsel admitted* at oral argument that the trial court ruled in Harvey's favor because it considered itself bound by *Hurt.* Counsel conceded that the court made no finding as to the reliability of the breath test results, and that she was not seeking affirmance on the basis of such presumed findings.

The fundamental holding of *Gholson* is that this Court may look to the trial court's on-the-record oral explanations of its judgment, and will not affirm a judgment by relying on "presumed findings of fact" which the court plainly did not make. *Gholson* cannot fairly be distinguished from this case; the fact is, the result the majority reaches here is necessarily inconsistent with, and effectively overrules, this recent *en banc* decision. I see no justification for refusing to follow *Gholson's* sensible approach.

## II.

Beyond what is said above, there is a second reason why we cannot rely on a presumed factual finding here: under the law governing at the time, the trial court *could not have made* the finding the majority now attributes to it.[4]

At the time of trial, the admissibility and evidentiary value of the breath test results were governed by *Coyle v. Director of Revenue,* 181 S.W.3d 62 (Mo. banc 2005). *Coyle* held that, if a breath test was conducted by a permitted operator, on approved equipment, in accordance with the Department of Health's regulations, the results of that test established a *prima facie* case of intoxication, which could not be disregarded unless the driver came forward with rebuttal evidence "that raises a genuine issue of fact regarding the validity of the blood alcohol test results." *Id.* at 64–65; *see also Verdoorn v. Dir. of Reve-*

4. The majority points out that "the Director does not raise the novel claim" I outline in § II. Maj. Op. at 830. That is hardly surprising, however: the Director has appealed the ruling the trial court actually made—that *Hurt* required a ruling in Harvey's favor. Harvey has not argued for affirmance based on the presumed finding the majority now attributes to the trial court. Quite the contrary: Harvey's counsel conceded at oral argument that no such finding was made. The Director's failure to argue against affirmance on the basis of presumed factual findings is therefore perfectly understandable. If anything is "novel" here, it is the basis on which the majority now affirms the trial court's judgment, which will no doubt be greeted with considerable surprise by the litigants, and by the trial court.

*nue,* 119 S.W.3d 543, 546–47 (Mo. banc 2003). Although this aspect of *Coyle* was later overruled by *White v. Director of Revenue,* 321 S.W.3d 298, 306 (Mo. banc 2010), *Coyle* stated the controlling legal standards when the trial court decided this case.

The majority opinion does not question whether the breath test satisfied the Department of Health's regulations. If we assume regulatory compliance, however, the breath test results could be disregarded under *Coyle* only if Harvey presented "additional evidence showing that [the chewing tobacco in his mouth] affected the validity of the blood alcohol test results." 181 S.W.3d at 66. Harvey did not present such rebuttal evidence. Like the driver in *Coyle,* Harvey "presented no evidence as to the effect of [chewing tobacco in the mouth] on blood alcohol test results, nor is the effect of [chewing tobacco] on blood alcohol test results a matter subject to judicial notice." *Id.* Absent such evidence, under *Coyle* the trial court was not "free to assess the credibility and weight to be afforded to the … breath tests," and "f[i]nd the test results to be unreliable in this particular instance." Maj. Op. at 829.

The majority contends that, prior to *White, Coyle* had been "effectively" overruled by *York v. Director of Revenue,* 186 S.W.3d 267 (Mo. banc 2006), and *Guhr v. Director of Revenue,* 228 S.W.3d 581 (Mo. banc 2007). Maj. Op. at 830.[5] But neither *York* nor *Guhr* cites *Coyle.* More importantly, *York* and *Guhr* addressed a different issue. Neither case involves the admissibility or evidentiary weight of breath test results; instead, both cases address

whether a law-enforcement officer had probable cause for making an arrest. The fact that *Guhr* and *York* held that a trial court may disbelieve the Director's evidence of probable cause is distinct from the trial court's freedom to disregard breath test results: unlike evidence of probable cause, the admissibility and evidentiary value of breath test results are governed in large measure by statute. *See* §§ 577.020.3 and .4, 577.026, 577.037.1 and .4, RSMo. Therefore, the fact that certain pre-*White* decisions involving probable-cause determinations had held (without citing *Coyle*) that a trial court was free to disbelieve the Director's evidence, does nothing to suggest that *Coyle* had been "effective[ly] overrul[ed]." Maj. Op. at 830. No trial court before *White* would have considered itself free to disregard breath test results in the manner the majority suggests, contrary to the Missouri Supreme Court's then-controlling decision addressing that precise issue.

Unless the majority is willing to presume that the trial court was clairvoyant, and forecast the decision in *White* three months before it was handed down, there is no basis to conclude that the court made the weight-of-the-evidence finding on which the majority now relies.

### Conclusion

The standard of appellate review does not require us to blind ourselves to what the record so clearly reveals, and instead engage in an exercise in make-believe. This is particularly true where the trial court would have been legally barred from making the factual findings the majority

---

5. The majority also contends that *Furne v. Director of Revenue,* 238 S.W.3d 177 (Mo.App. W.D.2007), recognized this "effective[ ] overrul[ing]" of *Coyle.* Maj. Op. at 830. *Furne's* precedential value is questionable, however: by the time of its issuance, one member of the

three-judge division had left the Court and therefore did not participate in the decision, while another "concur[red] in result only." *Furne,* 238 S.W.3d at 182. Thus, the *Furne* opinion represented the views of only a single member of this Court.

now hypothesizes. This Court obviously cannot make its own factual findings concerning the persuasiveness of the breath test results; nor can it evade this restriction by falsely imputing such findings to the trial court. The judgment must properly stand or fall on the basis on which it was decided: that the presence of chewing tobacco in Harvey's mouth during the observation period was "oral intake" prohibited by the Department of Health's regulations. Because the majority does not address that issue, however, any discussion of it in this opinion would not alter the result; I accordingly leave the "oral intake" issue for another day.